ODE GOURLEY, APPELLANT, V. CITY OF GRAND ISLAND, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

96 N. W. 2d 309

Filed May 8, 1959. No. 34571.

*Cunningham & Cunningham,* for appellant.

*Carl E. Willard,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action arising under the Nebraska Workmen's Compensation Act. The action was tried before

one member of the compensation court. Compensation was denied. Plaintiff appealed to the district court, where trial de novo was had, resulting in a judgment of dismissal. Plaintiff appeals.

We reverse the judgment of the trial court and remand the cause with directions to render judgment in accord with findings herein made.

The cause is here under the procedure that requires trial de novo in this court.

The issues here are narrowed down to these questions:

1. Did plaintiff prove an accident and injury so as to sustain a claim under the compensation act?

2. Is plaintiff's claim barred by sections 48-133 or 48-137, R. R. S. 1943?

3. And contingent on the answers to the first two questions, has plaintiff established a right to compensation and, if so, in what amount?

Except as to one fact question there is no particular dispute in the evidence. We determine that fact question later herein.

Plaintiff was employed by the defendant as an operator in its disposal plant. He had been so employed for some time. His monthly wage was $250. His regular hours for work were from 12 midnight to 8 a.m.

On July 18, 1956, he had worked his regular shift. He was then ordered to work 4 additional hours in a pit shoveling sludge. While so employed he slipped and fell and injured his hip. He changed clothes and returned to work. He suffered pain. He worked 3 hours and then refused to continue. He notified the superintendent. The superintendent was "very angry" because plaintiff was not working. Plaintiff went to the mayor and notified him of his accident and was ordered to go to the city physician, which he did. He was given "sick leave" of one day on an application blank which recited that his condition resulted from his employment by the city. The superintendent approved the application. He was told by the physician to return

to work, use a hot water bottle, and take pills which the city physician provided.

Thereafter he consulted the city physician from time to time, and was given additional pills which plaintiff continued to take. His hip and back got worse.

A fellow employee corroborated the fact of the fall to the extent of testifying to seeing the plaintiff's clothes and hands covered with sludge, his leaving the work and returning with clean clothes, and resuming work. Plaintiff's wife testified that when she returned home at 6 p.m. that day that plaintiff's hip was inflamed and later became black and blue. The city physician was not called as a witness.

The rule is: An accident within the Workmen's Compensation Act is an unexpected and unforeseen event happening suddenly and violently and producing at the time objective symptoms of injury. Crable v. Great Western Sugar Co., 166 Neb. 795, 90 N. W. 2d 805.

We deem the evidence ample to prove the happening of the accident on July 18, 1956.

On October 5, 1956, the city physician referred plaintiff to another physician for X-rays. X-rays were taken. He was then referred to another doctor on December 17, 1956, who recommended that plaintiff be given sick leave "for deep gluteal bursitis." This recommendation was made to the defendant. This doctor was not called to testify.

The defendant granted plaintiff sick leave with pay. He did not work from December 19, 1956, to January 2, 1957.

When his "sick leave was up" plaintiff again reported to the city physician and was told to return to work and take it easy. He was again given "pills" and told to take them. He was not discharged as a patient by the city physician.

This brings us to the point where the statutory defense may be determined.

The rule is: Where an employee who suffered an

accident arising out of and in the course of his employment requests and receives medical services and medicines furnished by the employer, it constitutes the receipt of compensation within the meaning of section 48-133, R. R. S. 1943, and dispenses with the necessity of making a claim for compensation within 6 months after the occurrence of the injury. Gilbert v. Metropolitan Utilities Dist., 156 Neb. 750, 57 N. W. 2d 770.

Defendant contends that this action is barred by section 48-137, R. R. S. 1943, which provides in part: "In case of personal injury, all claim for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within one year after the accident, one of the parties shall have filed a petition as provided in section 48-173. * * * Where, however, payments of compensation have been made in any case, such limitation shall not take effect until the expiration of one year from the time of making of the last payment."

This action was commenced in the compensation court by the filing of a petition on December 11, 1957.

We have held: "Where an employer furnishes medical, surgical, and hospital services to an employee, * * * the payments therefor constitute payment of compensation within the meaning of the employers' liability act." Baade v. Omaha Flour Mills Co., 118 Neb. 445, 225 N. W. 117.

Under the conditions existing here the defendant had furnished the plaintiff medical services and medicines. He was then working or on sick leave with pay. He was being paid the compensation which at that time he was in a position to demand. It accordingly must be held that plaintiff was paid compensation up to January 2, 1957. This is sufficient to toll the running of the one year statutory provision under its express terms.

We accordingly find that the defense of the statutes is not sustained.

There remains the question of whether plaintiff has produced evidence sufficient to sustain an award of compensation and, if so, in what amount.

Plaintiff returned to work and continued in his employment until he was discharged on September 1, 1957.

Plaintiff testified that on August 7, 1957, he slipped on a stairway in the course of his employment, and fell, striking his affected hip on a railing; and that orally he reported this fall to the superintendent the next morning. That he did report it is corroborated by the testimony of a fellow employee. Plaintiff's wife testified that when he returned home that day the hip was inflamed and later became black and blue, showing the effect of a bruise.

Defendant's superintendent denied that the plaintiff reported the accident; that if plaintiff did, the superintendent did not hear of it; and that no written report was made. In any event no action was taken by the defendant on it. Defendant also stresses the fact that plaintiff did not tell the orthopedic surgeon, who was consulted later, of the second accident, when giving a history of his case. The surgeon testified that it sometimes happened that patients overlooked telling a complete history.

We find that plaintiff has sustained the burden of proving the accident on August 7, 1957, within the scope of the rule that: In order to recover, the burden of proof is upon the claimant in a workmen's compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment. Crable v. Great Western Sugar Co., *supra.*

Plaintiff continued to work with increased difficulty following the second accident because of pain in the hip and back, with loss of sleep, etc. He was discharged on September 1, 1957, when found "dozing" or "sleeping" on the job. Thereafter plaintiff sought and secured work of a heavy nature which he was not able to per-

form. He was not able to work that winter or spring. He then had no employment except odd jobs that he could do subject to his physical limitations.

On August 1, 1958, plaintiff secured employment in "St. Luke's Home" at Kearney, Nebraska, washing dishes and doing maintenance work, such as "fixing faucets and stools." He was so employed at the time of trial. His wages were between $30 and $35 a week. He continues to suffer disability.

Plaintiff offered the medical testimony of two doctors. Defendant offered no medical evidence.

Earlier herein we pointed out that the city physician referred the plaintiff to a doctor for X-rays in October 1956, and that he was given sick leave and obeyed instructions as to treatment.

On November 21, 1956, plaintiff consulted Dr. DeMay. He found tenderness in the right hip joint and the right sacroiliac region. He placed plaintiff on medication. The doctor saw plaintiff on November 24, November 30, and December 8, 1956. He was then referred to Dr. House. Dr. House recommended sick leave and treatment for deep gluteal bursitis as earlier stated in this opinion. Dr. DeMay was again consulted on September 23, 1957, by the plaintiff. On September 26, 1957, Dr. DeMay placed him in a hospital for physiotherapy. He was placed in traction. He was in the hospital from September 26 to October 12, 1957. At that time plaintiff had marked tenderness and soreness in the area. Dr. DeMay was consulted on October 15 and 18, 1957, after plaintiff's dismissal from the hospital.

Plaintiff consulted Dr. Yost, an orthopedic surgeon on November 18, 1957, and was examined and additional X-rays were taken. He examined earlier X-rays and again saw plaintiff on December 10, 1957. The surgeon found the left hip to be normal. The right hip was involved. The plaintiff had an inability to straighten the hip to a neutral position, the contracture being approximately 10 degrees. He found tenderness and pain

on the rotation of the hip. He prescribed the use of a corset, walking with a cane, rest, and the use of aspirin.

On May 28, 1958, Dr. DeMay again examined the plaintiff. On June 13, 1958, Dr. Yost again examined the patient.

Dr. DeMay gave it as his opinion that plaintiff had a disability which limited heavy manual labor and was a 20 to 25 percent permanent partial disability sustained as a result of the injury which related back to the accident of July 1956 and that injury probably aggravated a pre-existing osteoarthritis, as "equivocal" evidence of osteoarthritis appeared in the initial X-ray photographs. He testified that it was a "minimal possibility" that osteoarthritis could have been aggravated by the injury, and that a pre-existing osteoarthritis would not give the degree of disability which plaintiff had. He further testified that there had been at no time complaint of pain in the left hip and that osteoarthritis was usually bilateral.

Dr. Yost estimated the disability to the right hip at 20 percent on both a functional and an anatomical base. He found plaintiff's left hip free from arthritic condition on the first examination. He found evidence of osteoarthritis in the right hip, and gave the opinion that the injury of July 1956, aggravated a pre-existing condition which, absent the injury, might not have manifested itself for years to come. Both doctors agreed that the disability is progressive in nature and may worsen and is permanent.

It may here be pointed out that neither medical witness relied on the accident of August 7, 1957, as a factor in reaching his conclusion.

We have then a case where the evidence shows without dispute that plaintiff was a strong, healthy man, without a disability prior to the accident and resulting injury of July 18, 1956. Thereafter he had a disability, gradually increasing in amount, that is progressive and permanent. We have the evidence, without dispute, of

the expert witnesses giving it as their opinions that the disability is the result of the accident. At best, from the defendant's standpoint, there is a suggestion of a pre-existing osteoarthritis condition, but no evidence that condition was or would have become disabling. The evidence negatives such a conclusion.

We accordingly hold that plaintiff has suffered a compensable disability resulting from an accident arising out of and in the course of his employment. On September 26, 1957, he was unable to work. He was hospitalized that day and remained in the hospital until October 12, 1957. Thereafter he was not able to work until in April or May when he was able to perform occasional yard work. He became steadily employed, as earlier stated, on August 1, 1958. There is no showing in the record that he was able to do continuous work prior to that time. Accordingly we hold that he was temporarily totally disabled from September 26, 1957, to August 1, 1958, that being a period of 44 weeks.

He is entitled to receive compensation for that period as provided in subdivision (1) of section 48-121, R. S. Supp., 1955, which at the time this accident happened provided for compensation at the rate of 66⅔ percent of the wages received at the time of the injury but not more than $30 per week nor less than $20 per week. See Laws 1955, c. 186, § 1, p. 527.

Plaintiff's wage at the time of the injury was $250 a month, or $58.33 a week. Sixty-six and two-thirds percent of that amount exceeds the statutory maximum. Hence plaintiff is entitled to receive the maximum allowed of $30 a week for 44 weeks, or a total of $1,320.

Beginning August 1, 1958, we find that plaintiff had a permanent partial disability of 20 percent for which he is entitled to receive compensation.

Under the provisions of subdivision (2) of section 48-121, R. S. Supp., 1955, plaintiff is entitled to receive compensation at the rate of 66⅔ percent of the difference between the wages received at the time of the in-

jury and the earning power of the employee thereafter but not to exceed 300 weeks for both temporary total and permanent partial disability.

Under the rule stated in Turner v. Beatrice Foods Co., 165 Neb. 338, 85 N. W. 2d 721, we accept the figure of $35 per week as plaintiff's earning power, that being the figure less favorable to plaintiff who offered the alternative evidence. The difference between $58.33 and $35 is $23.33. Sixty-six and two-thirds percent of that amount is $15.55. Plaintiff is entitled to receive that amount for the period beginning August 1, 1958, and thereafter for a period of 256 weeks.

Section 48-120, R. R. S. 1943, provides in part: "The employer shall be liable for reasonable medical and hospital services and medicines as and when needed, subject to the approval of the compensation court, not, however, to exceed the regular charge made for such service in similar cases; * * *."

The rule is: Where the evidence shows that certain hospital and nurse expenses have been incurred by the injured employee, a prima facie case is made out, and in the absence of any showing that the expenses so incurred were unreasonable, such proof will be held to be sufficient. Crable v. Great Western Sugar Co., supra.

There was admitted without objection the following expense items of the plaintiff covering medical, hospital, and other like expenses in connection with this matter: St. Francis Hospital, Grand Island, Nebraska, $294.60; Orthopedic Brace Co., $19.50; Dr. John G. Yost, $18; and Dr. Richard F. DeMay, $155.

Defendant is held liable for the payment of the above amounts.

The judgment of the trial court is reversed and the cause is remanded with directions to render a decree in accord with the findings made in this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.