421 N.W.2d 25 (1988)
228 Neb. 38
Leon E. CURRIER, Appellee,
v.
ROMAN L. HRUSKA U.S. MEAT ANIMAL RESEARCH CENTER, Appellant.
No. 87-223.
Supreme Court of Nebraska.
March 25, 1988.
*26 Robert M. Spire, Atty. Gen., and Janie C. Castaneda, Lincoln, for appellant.
Elizabeth Stuht Borchers and D. Christopher Smith of Marks & Clare, Omaha, for appellee.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
GRANT, Justice.
This is an appeal from the Nebraska Workers' Compensation Court. Plaintiff, Leon E. Currier, who was receiving disability and medical benefits, petitioned the court for additional benefits for ongoing personal care services provided in his home by a specific person, a woman unrelated to him. After rehearing on September 17, 1986, the court affirmed the original award and found that the personal care services were compensable under Neb.Rev.Stat. § 48-120 (Cum.Supp.1986) and Spiker v. John Day Co., 201 Neb. 503, 270 N.W.2d 300 (1978). The court ordered that the plaintiff recover from defendant, starting December 8, 1984, the sum of $135 per week as an allowance for personal home care, to
continue for as long as the plaintiff reasonably elects not to be a resident of a nursing care or extended care facility and for as long as the need for such home personal care persists. The payment of said weekly care allowance shall be in addition to the weekly benefits for temporary total disability. The Court *27 finds that said allowance is reasonable when one considers that this provides the plaintiff with approximately 40 hours of care at minimum wage. The Court has considered the fact that Linda Jacobsen is also employed part time as a dietary assistant at the local hospital, working 27 to 32 hours a week.
The record shows the following. On March 5, 1982, Currier, then 61 years old, suffered an injury to his back arising out of and in the course of employment by the defendant, Roman L. Hruska U.S. Meat Animal Research Center, operated by the State of Nebraska, when he fell into a fertilizer spreader from the back of a truck. As a result of the accident, Currier suffered a spinal injury and subsequently underwent surgery for a spinal fusion. In a Workers' Compensation Court proceeding, Currier was determined to be temporarily totally disabled. He was hospitalized in Omaha, Nebraska, and was transferred to Kearney County Community Hospital, where he stayed from August 1982 until December 1984. The defendant paid all hospital and medical expenses incurred by Currier in the accident. During his stay at the hospital, Currier was given permission to leave the hospital on occasion, and transported himself in a vehicle which had been adapted for him by the defendant.
In the spring of 1984, during his stay at the hospital, Currier and a dietary assistant whom he had met at the hospital orally agreed that she would "help him in a place to live and take care of him." Currier stated that he wanted to get some freedom and be on his own. In December 1984, Currier elected to leave the hospital, and the dietary assistant moved into his rental home to help in taking care of him. At the time of the rehearing, changes had been made in the home to accommodate Currier's disability. On March 15, 1985, Currier and the dietary assistant entered into a written employment contract, agreeing that the assistant was to be employed as a "domestic household service worker and personal nurse to perform such duties as are customarily performed by one holding such position in other similar arrangements." The contract provided that the assistant was to receive $800 per month in compensation for her services, in addition to room and board. At the time of the rehearing, she had not been compensated for any of her services.
Dr. Donald Prince, a physician who had treated Currier on a daily basis during his stay at Kearney County Community Hospital, testified in a posthearing deposition dated October 1, 1986. In his deposition, Dr. Prince testified that Currier had been required to stay in the hospital for rehabilitation purposes so that he could eventually live at home with a care person. Dr. Prince testified that at the time Currier left the hospital in December 1984, although Currier was able to walk with the use of canes, he needed assistance in the event of a fall. Although Dr. Prince had not prescribed any specific medical regimen after Currier's release from the hospital, he testified in his deposition that Currier needed assistance in everyday tasks such as bathing, preparation of meals, and getting dressed; that he needed someone to relieve his pain during a muscle spasm; and that he needed someone to help him in the event of a fall. It was his opinion that Currier was totally disabled with no possibility of recovery and that Currier was unable to live by himself without assistance.
The nurse who had treated Currier during his stay at the hospital testified that at the time Currier left the hospital, he had complete immobility of the upper spine, could not bend or twist, could not lift or pull, had muscle spasms during the night, and needed medication and assistance to change the position of his legs; that although he was able to walk with canes, he had difficulty balancing; and that he needed help in getting dressed. Although the nurse could not estimate how many hours per day Currier required assistance, she testified that Currier needed assistance during specific times of the day with dressing, with preparation of meals, at bedtime, and for daily inspections of his body for sores and infections.
The dietary assistant testified that she spends approximately 75 to 85 hours per week caring for Currier. She makes his *28 coffee in the morning, bathes or showers him, puts on his shoes and socks, helps him get dressed, makes his breakfast, does his housework and yardwork, takes him to the doctor, assists him when he loses his balance or falls, gives him medication, untangles his legs when he experiences muscle spasms, and helps him off the bathroom stool. In addition to these duties, she continues to work approximately 27 to 32 hours per week as a dietary assistant at the hospital. Currier described his muscle spasms as follows:
A. Your legs cramp up, pull up, you get it in the hips and back. Get them crossed in the nights, can't get them uncrossed, legs crossed at night. You have to roll over. You get the spasms, you get them uncrossed, you are hollering for somebody to get there.
Q. Do you holler for [the dietary assistant]
A. Yes.
Q.  to assist you then? Are you able to tell me how many nights in the last couple of nights that you have had muscle spasms that have woken you up?
A. That wakes me up?
Q. Uh-huh.
A. Like I say, I could tell you the time that it don't everYou may sleep for an hour, hour and a half; you might sleep for two hours; might sleep for 30 minutes. It all depends on your condition. Get a wrinkle in the bed sheet or something, you're going to have a spasm. You have to get up out of bed and have the bed straightened out for you.
The State assigns as error that the Workers' Compensation Court erred in "providing that housekeeping services and personal care services are compensable pursuant to Neb.Rev.Stat. § 48-120 (Reissue) and Spiker v. John Day Co., 201 Neb. 503, 270 N.W.2d 300 (1978)."
We first note that § 48-120 provides that "the employer shall be liable for all reasonable medical, surgical, and hospital services" and that the Workers' Compensation Court "shall have the authority to determine the necessity, character, and sufficiency of any medical services." In our review of a workers' compensation case, the findings of fact by the Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. Hernandez v. Farmland Foods, 227 Neb. 629, 418 N.W. 2d 765 (1988); Bender v. Norfolk Iron & Metal Co., 224 Neb. 706, 400 N.W.2d 859 (1987). The Workers' Compensation Act is to be broadly construed so that the purposes of the act are not "thwarted by technical refinements of interpretation." Marlow v. Maple Manor Apartments, 193 Neb. 654, 656-57, 228 N.W.2d 303, 305 (1975); Spiker v. John Day Co., 201 Neb. 503, 270 N.W.2d 300 (1978).
In Spiker, this court held that, pursuant to § 48-120, a totally and permanently disabled workman who required nursing care as the result of an accident arising out of and in the course of employment can recover the cost of the nursing care, even though such care will not cure or lessen the disability. The evidence in Spiker showed that the employee required nursing care on a full-time basis. In order to reduce the costs of his care, the employee's wife cared for the employee at home. During the night, it was necessary for her to get up at least once to change his bedding. The wife administered medication to him when he had a bladder spasm, inserted catheters, and generally took care of him on the evenings and weekends when the employed nurse was absent. The Spiker court held that, pursuant to § 48-120, a workman may recover, as medical benefits, the reasonable value of the nursing care furnished by his spouse while cared for at home, overruling this court's earlier decision in Claus v. DeVere, 120 Neb. 812, 235 N.W. 450 (1931). The injured employee in Spiker was also entitled to recover the reasonable expenses of the nurses and aides who assisted in caring for him at home. As set out in the concurrence of Brodkey, J. (joined by Boslaugh, McCown, and White, JJ.) in Spiker, three basic requirements must be met before compensation may be rendered for care to an injured employee by the spouse in the home: (1) The employer *29 must have knowledge of the employee's disability and need of assistance as a result of a work-related accident; (2) the care given by the spouse must be extraordinary and beyond normal household duties; and (3) there must be a means of determining the reasonable value of the services rendered by the spouse.
The Spiker holding was reaffirmed in S & S LP Gas Co. v. Ramsey, 201 Neb. 751, 272 N.W.2d 47 (1978), and applied in a different fact situation. Ramsey did not have a house to go to, and the necessary services were rendered by a nursing home. In Ramsey, the employee needed assistance in eating, bathing, dressing, going to the toilet, and getting in and out of bed, and needed nursing-type care on a 24-hour basis. The court approved the payment for such service.
Unlike the situation presented in Spiker, the care rendered to Currier is not provided by a spouse, but is provided by a woman unrelated to him. We are unable to understand the State's emphasis on the fact that nursing services are being furnished to Currier by an unrelated female person. The evidence shows that Currier is an injured person who needs assistance from some other person, and he does not have a spouse. As stated in the concurrence of Brodkey, J. (joined by Boslaugh, McCown, and White, JJ.) in Spiker, the focus is on the "`nature of the service provided, not the status or devotion of the provider of the service....'" 201 Neb. at 522, 270 N.W.2d at 310. In S & S LP Gas Co. v. Ramsey, supra 201 Neb. at 752, 272 N.W.2d at 47, this court stated that "[i]t is not essential that the assistance ... be furnished by a doctor, nurse, or other medical person." The Ramsey court approved payments to an unrelated person.
Appellant asserts that neither the language in § 48-120 nor the court's holding in Spiker interprets "`reasonable medical services'" to include "general housekeeping services or personal care services" as a compensable award. Brief for Appellant at 18. In its order, however, the Workers' Compensation Court determined that the services provided by the dietary assistant were not normal housekeeping services and that the personal care services provided by the assistant were medically necessary and compensable. The evidence herein supports that finding.
Appellant knew of Currier's disability. In a letter dated July 25, 1985, the appellant indicated that "[w]e do agree that we would be liable for providing medical services to Mr. Currier in his home if such were necessary." Although the letter indicated that the appellant did not believe that these services were necessary, the record reveals that the appellant did have notice of Currier's disability and need of assistance. Furthermore, as Currier was still determined to be totally disabled at the time he left the hospital, it is unreasonable for appellant to assume that further medical care outside of a hospital environment was unnecessary.
In regard to the second prong of the Spiker three-part test, appellant contends that the services provided by the assistant are normal household duties or personal care services and are thus not compensable. At page 13 of its brief, appellant states, "If this court were to find that the employer is liable for `nursing services' which includes household services and personal care services then the issue would be solved and the Spiker holding would have to be extended to include such services." We find, however, that the Workers' Compensation Court could have found that many of the services provided by the assistant were compensable. We note that this court is in accord with other jurisdictions which deny compensation for ordinary household duties which are performed by a spouse. The basis for such holdings is that a spouse performs such duties both for herself and for her husband as a part of the marital relationship. Such considerations are not present in this case.
The Michigan Court of Appeals stated:
Thus, the fact that a spouse is able to perform household tasks during those times when not actually in attendance with the patient is irrelevant under the circumstances of this case. If the services were provided by someone other than *30 plaintiff's wife, that person would, we assume, pursue his or her own interests within the limits of the job. Such person might read, knit, watch television, or nap during those times in which he or she is simply "on call". The fact that [the service provider] might use her "on call" time to perform household tasks does not alter the "nature of the service provided" or the "need" for the service.
Brown v. Eller Advertising Co, 111 Mich. App. 538, 543, 314 N.W.2d 685, 688 (1981).
Ordinary, noncompensable housekeeping tasks include cleaning, preparation of meals, and washing and mending clothes. Compensable tasks include serving meals in bed, bathing and dressing, administering medication, and assisting with sanitary functions. Sealey Mattress Co. v. Gause, 466 So.2d 399 (Fla.App.1985); Trejo v. Mich Sugar Co, 133 Mich.App. 753, 350 N.W.2d 314 (1984).
The testimony presented at the 1986 rehearing established that Currier is unable to live in his own home without assistance. Currier needs help in dressing, bathing, relief of pain during a muscle spasm, administering of medication, and in the event of a fall. The testimony fully supports the finding of the compensation court that the services provided by the dietary assistant are medically necessary and thus compensable, because those specific services are beyond the scope of ordinary household duties. Because of Currier's disability, it is necessary that some person be available, especially during the nighttime hours, to render medical services. We hold that a person rendering necessary medical services on an "as-needed" basis need not render the services during each moment of compensated time but, rather, must be available to perform the needed services during the times when needed. Appellant's first assignment of error is without merit.
In the State's second assignment of error, the State claims that the court erred in the amount awarded to Currier for the services provided by the dietary assistant. Appellant asserts that the reasonable value of these services is not capable of ascertainment. Where there is sufficient, competent evidence to support the amount of an award in a workers' compensation case, that amount will not be set aside unless clearly wrong. See Hernandez v. Farmland Foods, 227 Neb. 629, 418 N.W. 2d 765 (1988). The Workers' Compensation Court's determination that Currier should be compensated for the assistant's services at the rate of $135 per week is based on the minimum wage payable for a 40-hour week. The assistant testified that she spends 75 to 85 hours per week caring for Currier. Although the estimate provided by the assistant may include time spent for noncompensable services, the nature of her duties required that she be at Currier's disposal during specific times. As stated in Bello v. Zavota Bros. Transp. Co., Inc., 504 A.2d 1015, 1018-19 (R.I.1986).
The fact that [a person] may not have been actively performing a strictly medical task at each and every moment of the day does not mean that she should not be compensated for her continuous attendance. This case is analogous to the situation in which a night nurse watches over a sleeping patient. The fact that the patient sleeps through the night does not support an argument that the nurse should not be paid for the night. He or she must be present and available to meet the patient's needs, not according to some preestablished timetable, but as the patient experiences them.
The fact that an attendant service provider may perform household tasks during "on-call" time does not alter either the need for or the nature of the services provided. Standard Blasting & Coating v. Hayman, 476 So.2d 1385 (Fla.App.1985). The administrator at Kearney County Community Hospital testified that alternative institutional care at the hospital for Currier was, at the time of the rehearing, $870 per month. This figure was based on the room rate only and did not include charges for additional services.
It is apparent from the foregoing that the sum of $135 per week for the services provided by the assistant was reasonable and well within the range of the evidence. Appellant's second assignment of error is *31 without merit. Appellee is awarded the sum of $1,500 for attorney services in this court.
The decision of the Workers' Compensation Court is affirmed.
AFFIRMED.