BITUMINOUS CASUALTY CORPORATION, APPELLANT AND
CROSS-APPELLEE, V. THEODORE C. DEYLE, APPELLEE AND
CROSS-APPELLANT.
451 N.W.2d 910

Filed February 23, 1990.    No. 89-426.

William M. Lamson, Jr., and Patricia A. Zieg, of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Daniel L. Lindstrom and Jeffrey H. Jacobsen, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Bituminous Casualty Corporation (Bituminous) appeals from an order of the Nebraska Workers' Compensation Court, which, on rehearing, directed Bituminous to pay $56,412.05 in nursing expenses for Theodore C. Deyle. Deyle cross-appeals and contends that the Workers' Compensation Court erred in failing to award him an additional sum for waiting time, an attorney fee, and interest.

## STANDARD OF REVIEW

" 'Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. [Citations omitted.] In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. [Citations omitted.] Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of

the facts for that of the Worker's Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. [Citations omitted.] As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.' "

*Osborne v. Buck's Moving & Storage*, 232 Neb. 752, 752-53, 441 N.W.2d 906, 906-07 (1989). See, *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987). See, also, Neb. Rev. Stat. § 48-185 (Reissue 1988).

### BITUMINOUS I

On August 4, 1984, Deyle, employed as president of the Deyle Construction Company, sustained a severe back and spinal injury. When a dispute arose over the compensability of Deyle's claim for workers' compensation, Bituminous, the insurer for Deyle's employer, filed an action in the Workers' Compensation Court to determine liability on Deyle's claim. On December 30, 1985, the Workers' Compensation Court entered its "Award on Rehearing" and ordered Bituminous to pay disability benefits to Deyle and pay Deyle's medical expenses of $61,229.67. Bituminous appealed.

In *Bituminous Casualty Corp. v. Deyle*, 225 Neb. 82, 402 N.W.2d 859 (1987) (*Bituminous I*), issued on March 27, 1987, we concluded that Deyle was not entitled to disability benefits. Consequently, in *Bituminous I* we held that the Workers' Compensation Court's "judgment is in error and must be reversed" concerning the award of disability benefits, but that "[t]he judgment of the three-judge panel of the Workers' Compensation Court is affirmed except as modified" regarding the appellate disallowance of disability benefits. 225 Neb. at 91, 402 N.W.2d at 865-66. Thus, as the result of *Bituminous I*, the initial award of $61,229.67 for Deyle's medical expenses remained intact.

### AFTER *BITUMINOUS I*

On September 3, 1987, Bituminous paid part of Deyle's medical expenses ordered to be paid under the initial award

modified in *Bituminous I.* When Bituminous failed to pay the balance of the medical expenses, Deyle filed his petition in the Workers' Compensation Court to recover the remaining and unpaid medical expenses pursuant to the initial award and additional medical expenses which he had incurred after the initial award.

*Pretrial Order.*

As the result of a pretrial conference before rehearing in the Workers' Compensation Court, the pretrial order specified that among the issues were whether Deyle's nursing care and expenses were fair and reasonable; whether certain medical expenses were the result of his back injury; and whether Deyle was "entitled to receive additional sums for waiting time, attorney fees, and interest . . . ." As we expressed in *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 684, 380 N.W.2d 268, 273 (1986):

> Pretrial conferences are conducted to simplify and narrow issues presented in a case. [Citation omitted.] Issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. [Citation omitted.] Generally, issues delineated in an unaltered pretrial order supplant the issues raised in the pleadings. [Citation omitted.]

Before the rehearing, Bituminous paid the balance of the medical expenses in compliance with the initial award modified in *Bituminous I.*

*Evidence of Medical Expenses.*

Deyle is unmarried. After the compensable 1984 back injury, Deyle's right leg was amputated below the knee. Even prior to the amputation, Deyle had experienced difficulty in moving about, but at times he was somewhat ambulatory with a "walker." With the exception of hospital confinement for approximately 1 month in 1987, for 12 days in early April 1988, and for 7 weeks from late April until June 21, 1988, all Deyle's care in question was received in his home in Kearney, Nebraska.

Deyle's physician, Dr. Robert C. Rosenlof, expressed a medical preference that any of his patients with a back injury

such as that sustained by Deyle receive inhome care whenever the circumstances allow. Deyle's medical problems from the 1984 accident included severe and chronic pain in his legs and back, recurrent urinary tract infections, and loss of neuromuscular control on account of the "cord injury," which resulted in difficulties with his bowels, bladder, and prostate.

According to Dr. Rosenlof, Deyle was "not able to be up and around." Consequently, Deyle's condition involved protracted bed rest during which he was unable to move himself within his bed. Extended bed rest required that someone check Deyle's body for "ulcers" and assist him in moving from the bed into the walker and, later, from the walker into the bed. As Dr. Rosenlof observed, even with a walker, Deyle's ambulation required "considerable assistance." The instability in Deyle's back makes use of a prosthesis doubtful. Deyle requires assistance in setting up equipment for his bowel movement and catheterization, and in monitoring his blood pressure in view of his hypertension. As a result of limited locomotion, Deyle cannot prepare his meals or bathe himself. Dr. Rosenlof felt that someone would have to be with Deyle in case of an urgent need for some form of assistance during the night. For that reason, Dr. Rosenlof prescribed inhome nursing care around-the-clock for Deyle.

The personnel hired by Deyle to render inhome nursing care included a nurse's aide who stayed at Deyle's home and provided care from 5 p.m. until 8 a.m. for a monthly salary of $1,000. Deyle also hired a certified care staff member (CSM), who had more training than a nurse's aide, to take care of him from 8 a.m. to 5 p.m. on weekdays and paid the CSM $5 per hour. A licensed practical nurse, whom Deyle paid $3.50 per hour, came to Deyle's home and worked Saturdays and Sundays from 8 a.m. to 5 p.m. Deyle employed other personnel on an "as needed" basis when one of the regular nursing employees was unavailable.

Karma Dorn, a representative of the area agency on aging, which had assisted Deyle in finding nursing personnel, testified that Deyle was paying the "going rate" for his inhome nursing care. Dorn also testified that the rates for similar personnel obtainable through the private duty services pool at the Good

Samaritan Hospital in Kearney were $7.25 per hour for a nurse's aide and $10.35 for an LPN. Although Good Samaritan's pool did not include a CSM, Dorn stated that a CSM in the Kearney area was paid $5.55 as a starting hourly wage in 1986.

For the inhome nursing care, Deyle paid $56,412.05 as follows: For the last three quarters of 1986, $15,388.04; for 1987, $23,184.96; and for the first three quarters of 1988, $17,839.05. According to our interpolative computations, Deyle paid a daily rate of $55.96 for his nursing care in 1986, $63.52 in 1987, and $65.11 in 1988.

Deyle was confined to a hospital for 35 of 92 days during the third quarter of 1987. During his hospital confinement, Deyle continued paying a nurse's aide $3,000 for the quarter notwithstanding his absence from home. Also, during the second quarter of 1988, Deyle was hospitalized for 66 of the 91 days during the quarter, but continued to pay a nurse's aide $3,000 for the quarter despite his hospital confinement. Evidence failed to suggest that continued payment during Deyle's hospitalization was a necessary arrangement to assure the availability of nursing personnel on Deyle's dismissal from the hospital.

Bituminous introduced testimony from two representatives of Kearney area nursing homes which provide nursing care similar to that received at Deyle's home. Harry Carlsen of St. John's Nursing Home testified that had Deyle been at St. John's, he would have been charged a daily rate of approximately $45 in 1986 and $48 in 1987 and a rate of $51.40 in 1988. Linda Chandler of St. Luke's Good Samaritan Village testified that the daily rates for a patient of Deyle's needs were $43.50 in 1986, $50.50 in 1987, and $48.20 in 1988. No evidence indicated that nursing home facilities were available when Deyle received his inhome nursing care.

## DECISION OF WORKERS' COMPENSATION COURT

The Workers' Compensation Court determined that Deyle did require inhome nursing care as a result of his August 1984 injury and that Bituminous must reimburse Deyle for such care. See Neb. Rev. Stat. § 48-120 (Reissue 1988) (employer's liability

for employee's medical expenses). The court also found that the expenses for the inhome nursing care rendered to Deyle were fair and reasonable. Therefore, the court ordered Bituminous to pay $56,412.05 for the inhome nursing expenses which Deyle had incurred.

Further, the Workers' Compensation Court concluded that Neb. Rev. Stat. § 48-125 (Reissue 1988)

> is limited to compensation payable under the provisions of the Nebraska Workers' Compensation Act and does not apply to delinquent payment of a medical or hospital expense. Section 48-125 addresses "compensation" as the amount payable periodically in accordance with the methods of payments of wages of the employee at the time of the injury (emphasis supplied). The Court does not feel that the word "compensation" includes medical expenses, but is limited to payment of compensation for disability.

On that basis, the court refused to assess any sum for Bituminous' delay in satisfying the initial award, which had been affirmed as modified in *Bituminous I*, and refused to award an attorney fee or assess interest under § 48-125. Also, the court made no provision for postjudgment interest on the initial award (*Bituminous I*).

## ASSIGNMENTS OF ERROR

Bituminous appeals and assigns two errors, claiming that (1) Deyle's inhome nursing expenses are not recoverable medical expenses and (2) even if the rendered services are medical in nature, the expenses are not fair and reasonable charges for the services rendered.

Deyle cross-appeals and contends that he is entitled to sums for Bituminous' delay in satisfying the initial award, an attorney fee, and interest for delayed payment of the initial award, all authorized by § 48-125, and that he is entitled to postjudgment interest on the initial but modified award (*Bituminous I*).

## INHOME NURSING CARE EXPENSES

Section 48-120 provides:

> The employer shall be liable for all reasonable medical, surgical, and hospital services . . . not to exceed the regular

charge made for such service in similar cases. . . .

. . . .

The Nebraska Workers' Compensation Court shall have the authority to determine the necessity, character, and sufficiency of any medical services furnished or to be furnished . . . .

Generally, pursuant to § 48-120, an employee may be reimbursed for nursing care in the employee's home or at a nursing home, when such care is necessitated by a work-related injury, so long as the cost of the care is fair and reasonable. *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978). See, also, *S & S LP Gas Co. v. Ramsey*, 201 Neb. 751, 272 N.W.2d 47 (1978).

Bituminous "submits that Deyle is not entitled to compensation for services which include simply being present in the household, ordinary housekeeping tasks, cleaning, preparation of meals, washing and mending of clothes." Brief for appellant at 12.

Bituminous bases its argument on *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr.*, 228 Neb. 38, 45, 421 N.W.2d 25, 30 (1988), in which we stated that "[o]rdinary, noncompensable housekeeping tasks include cleaning, preparation of meals, and washing and mending clothes. Compensable tasks include serving meals in bed, bathing and dressing, administering medication, and assisting with sanitary functions."

The substance of Bituminous' argument, as we interpret the argument, is that Bituminous is not liable for services received by Deyle which might have been rendered by nonnursing personnel.

Consistent with *Currier*, charges for services by the nursing personnel hired by Deyle are compensable under § 48-120 notwithstanding that the services could have been performed by nonnursing personnel. In *S & S LP Gas Co. v. Ramsey, supra* at 752, 272 N.W.2d at 47, this court recognized the compensability of nursing care expenses incurred by a claimant for whom it was "not essential that the [nursing] assistance . . . be furnished by a doctor, nurse, or other medical person."

Bituminous also argues that Deyle should not be reimbursed

for expenses attributable to the nursing personnel's "simply being present in the household." Brief for appellant at 12. However, as we stated in *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr., supra* at 45-46, 421 N.W.2d at 30, "a person rendering necessary medical services on an 'as-needed' basis need not render the services during each moment of compensated time but, rather, must be available to perform the needed services during the times when needed."

Bituminous further argues that the charges for Deyle's nursing care are not fair and reasonable and, thus, are unrecoverable under § 48-120, which provides that the medical expenses recoverable pursuant to the Workers' Compensation Act must not "exceed the regular charge made for such service in similar cases."

As Bituminous correctly points out, an employee has the burden to prove compensability of a claim against an employer under the Nebraska Workers' Compensation Act. *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988); *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987).

However, we cannot justifiably ignore the longstanding rule established for nearly 70 years in Nebraska: "Where the evidence shows that certain hospital and nurse expenses have been incurred by the injured employee, a prima facie case is made out, and in the absence of any showing that the expenses so incurred were unreasonable, such proof will be held to be sufficient." *Gourley v. City of Grand Island*, 168 Neb. 538, 546, 96 N.W.2d 309, 314 (1959). See, also, *Schoenrock v. School Dist. of Nebraska City*, 179 Neb. 621, 139 N.W.2d 547 (1966); *Pavel v. Hughes Brothers, Inc.*, 167 Neb. 727, 94 N.W.2d 492 (1959); *Crable v. Great Western Sugar Co.*, 166 Neb. 795, 90 N.W.2d 805 (1958); *Gilmore v. State*, 146 Neb. 647, 20 N.W.2d 918 (1945); *Nosky v. Farmers Union Cooperative Ass'n*, 109 Neb. 489, 191 N.W. 846 (1922).

As we recently recognized in *State v. Kipf, ante* p. 227, 450 N.W.2d 397 (1990), prima facie proof is evidence sufficient to submit an issue to the fact finder and precludes a directed verdict in a jury trial, or dismissal for a failure of proof in a bench trial or case tried without a jury, on an issue in the

proceedings. See *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). Consequently, as the result of prima facie proof on an issue, an adversary has the burden of producing evidence to the contrary or risks an adverse finding on the issue for which there is prima facie proof. See *Speas v. Bank*, 188 N.C. 524, 530, 125 S.E. 398, 401 (1924): "[W]hen such prima facie case is made out, the duty of going forward with evidence in reply, if the opposing party would not hazard the chance of an adverse verdict, is shifted or rather cast upon the opposite side." See, also, 9 J. Wigmore, Evidence in Trials at Common Law § 2487 (J. Chadbourn rev. 1981). Therefore, when an employee presents evidence of medical expenses resulting from a work-related injury, the employee has presented prima facie proof of fairness and reasonableness for the expenses, while the employer has the burden of producing evidence, or going forward with evidence, that the expenses incurred are not fair and reasonable charges. See, *Gourley v. City of Grand Island, supra*; *Schoenrock v. School Dist. of Nebraska City, supra*; *Pavel v. Hughes Brothers, Inc., supra*; *Crable v. Great Western Sugar Co., supra*; *Gilmore v. State, supra*; *Nosky v. Farmers Union Cooperative Ass'n, supra*.

Deyle presented evidence that Dr. Rosenlof prescribed 24-hour-a-day care for Deyle and that inhome care was the preferred method of treatment for serious back and spinal injuries such as those sustained by Deyle as the result of his 1984 work-related injury. There was also evidence that Deyle was paying the "going rate" for his inhome care. Thus, Deyle has made a sufficient showing for the compensation court's conclusion that Deyle incurred the inhome nursing expenses as a result of his 1984 compensable injury. Evidence supports the finding that Deyle needs 24-hour assistance every day, even if the nursing personnel in attendance are not performing services which are medical in nature each moment of the entire 24 hours everyday. Deyle's evidence concerning nursing expenses is sufficient proof that the charges for the inhome care are fair and reasonable.

Bituminous also contends that some of Deyle's expenses for nursing care are unnecessary because Deyle was hospitalized during part of the period when he paid for inhome nursing care.

The third quarter of 1987 consisted of 92 days, of which Deyle was hospitalized 35 days, or 38 percent of the period. Expenses for a nurse's aide during the third quarter of 1987 were $3,000. Similarly, in the second quarter of 1988, which consisted of 91 days, Deyle was hospitalized for 66 days, or 73 percent of 1988's second quarter, for which Deyle paid $3,000 regarding care by a nurse's aide. Although nursing personnel required in a patient's home on an as needed basis need not perform medically related tasks during each moment of their presence in the patient's home, it does seem somewhat plausible, and we conclude, that Bituminous should not have to reimburse Deyle for the expenses pertaining to care by a nurse's aide while Deyle was absent from his home during his hospital confinement. Consequently, we determine that the Workers' Compensation Court's order that Bituminous reimburse Deyle for $56,412.05 is clearly incorrect. Utilizing the percentages based on the periods of Deyle's hospitalization when he continued paying for care by a nurse's aide, the allowable nursing expenses for the third quarter of 1987 are reduced by $1,140 ($3,000 times 38 percent), and the allowable nursing expenses for the second quarter of 1988 are reduced by $2,190 ($3,000 times 73 percent), which results in an overall reduction of $3,330 ($1,140 plus $2,190) concerning the recoverable medical expenses for the nursing care received by Deyle. Thus, Deyle's recoverable medical expenses, pursuant to § 48-120, are $53,082.05, not $56,412.05 as ordered by the Workers' Compensation Court. For that reason, the "Order on Rehearing" is hereby modified to require that Bituminous reimburse Deyle, or otherwise satisfy Deyle's medical expenses, in the amount of $53,082.05 as otherwise provided in the order of the Workers' Compensation Court.

## DEYLE'S CROSS-APPEAL

Deyle contends that he is entitled to sums for waiting time, an attorney fee, and interest, all as provided by § 48-125, and that he is entitled to postjudgment interest. See, Neb. Rev. Stat. §§ 45-103 (interest on judgments and decrees) and 45-103.01 (Reissue 1988) (accrual of postjudgment interest from rendition of judgment).

Before addressing the merits of Deyle's cross-appeal, we first must determine whether the issues in the cross-appeal were jurisdictionally before the Workers' Compensation Court. The question is whether the Workers' Compensation Court had subject matter jurisdiction to construe its prior award, which was affirmed as modified in *Bituminous I*, and thereby declare Deyle's rights and Bituminous' liabilities under the previous award.

Although rather inartfully expressed in his petition for the action on which this appeal is based, in accordance with the pretrial order Deyle sought a declaratory judgment in the Workers' Compensation Court regarding the legal effect of the modified award in *Bituminous I*.

*Declaratory Judgment in the Workers' Compensation Court.*

In considering whether the Workers' Compensation Court has authority to enter a declaratory judgment, we first examine Neb. Rev. Stat. § 25-21,149 (Reissue 1985) of the Uniform Declaratory Judgments Act, which provides:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Thus, if the Workers' Compensation Court is a "court of record," that court has statutory authority for a declaratory judgment.

The Workers' Compensation Court is vested with judicial authority. See Neb. Const. art. V, § 1, which states: "The judicial power of the state shall be vested in a Supreme Court, district courts, county courts . . . and such other courts inferior to the Supreme Court as may be created by law." See, also, Neb. Rev. Stat. § 48-152 (Reissue 1988) (creation of Workers' Compensation Court).

The phrase "court of record," used in § 25-21,149, remains

undefined in Nebraska law, although the phrase has been used in previous decisions of this court. See, *Rohn v. Kelley*, 156 Neb. 463, 56 N.W.2d 711 (1953), *overruled on other grounds*, *Lambie v. Stahl*, 178 Neb. 506, 134 N.W.2d 86 (1965) (finding that the county courts are "courts of record"); *State, ex rel. City of Omaha, v. Board of County Commissioners*, 109 Neb. 35, 189 N.W. 639 (1922) (determining that "courts of record," as intended by the Legislature in 1879, meant those courts which were then known to the law).

> The old definition of a court of record given by Blackstone is "that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony, which rolls are called the record of the court and are of such high and supereminent authority that their truth is not to be called in question."

*Chrisman v. Met. Life Ins. Co.*, 178 Tenn. 321, 325, 157 S.W.2d 831, 832-33 (1942). A "court of record" has also been defined as "being one the history of whose proceedings is perpetuated in writing. Also, it is required that some duly authorized person should record such proceedings, and when an act speaks of courts of record it speaks of courts whose proceedings are duly recorded by some authorized person or persons." *Tourtelot v. Booker*, 160 S.W. 293, 297 (Tex. Civ. App. 1913).

Thus, a court which is required by law to keep a permanent and written memorialization of determinations made in proceedings brought to obtain a judicial resolution of a question is a "court of record."

Neb. Rev. Stat. § 48-167 (Reissue 1988) of the Nebraska Workers' Compensation Act provides: "The Nebraska Workers' Compensation Court shall keep and maintain, in its office at the State Capitol, a full and true record of all proceedings, documents, or papers ordered filed, rules and regulations, and decisions or orders." Also, Neb. Rev. Stat. § 48-157 (Reissue 1988) states in relevant part:

> The clerk [of the Nebraska Workers' Compensation Court] shall, under the direction of the presiding judge, keep a full and true record of the proceedings of the compensation court and record all pleadings and other papers filed with the compensation court, and no other

action shall be taken thereon until the same have been recorded.

Thus, we conclude that the Nebraska Workers' Compensation Court is a "court of record" and, as such, has the authority to enter a declaratory judgment pursuant to the Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985).

Our inquiry, however, does not end here, for we must also determine whether Deyle's claim for additional sums for waiting time, attorney fees, and interest under § 48-125 and for postjudgment interest is an appropriate subject for declaratory judgment.

Section 25-21,150 provides:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Further, § 25-21,153 provides: "The enumeration in [§] 25-21,150 . . . does not limit or restrict the exercise of the general powers conferred in § 25-21,149, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."

"The remedy of declaratory judgment may be available to a litigant when a controversy exists as a result of a claim asserted against one who has an interest in contesting such claim, the controversy is between persons whose interests are adverse, the party seeking declaratory relief has a legally protectable interest or right in the subject matter of the controversy, and the issue involved is capable of present judicial determination."

*Mullendore v. Nuernberger*, 230 Neb. 921, 925, 434 N.W.2d 511, 514-15 (1989) (quoting *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986)).

Obviously, an award, order, or judgment of the Workers' Compensation Court reflecting a determination whether there is liability under the Nebraska Workers' Compensation Act is

within the subject matter jurisdiction of the Workers' Compensation Court. Cf. § 25-21,149: "Courts of record within their respective jurisdictions shall have power to declare rights . . . ."

In light of the foregoing law, both statutory and decisional, Deyle's claim for additional sums under § 48-125 presents questions of law pertaining to the Workers' Compensation Court's prior award (*Bituminous I*) and are appropriate subjects for declaratory judgment.

Since Deyle's second action in the Workers' Compensation Court raised a question of law and does not involve a request that the court vacate or modify its award, the rule expressed in *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984), namely, the Workers' Compensation Court lacks authority to vacate or modify its judgment during the term at which the court renders the judgment, is inapplicable in the present appeal. Neither does our holding in *Black v. Sioux City Foundry Co.*, 224 Neb. 824, 401 N.W.2d 679 (1987), that the compensation court lacks power to clarify its final judgment in the same action in which the judgment was entered, have any application.

*Sums Under § 48-125.*

We now proceed to determine whether Deyle's cross-appeal has merit.

Section 48-125(1) in part provides:

> Except as hereinafter provided, all amounts of compensation payable under the Nebraska Workers' Compensation Act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death; *Provided*, fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability. Whenever the employer refuses payment, or when the employer neglects to pay compensation for thirty days after injury, and proceedings are held before the Nebraska Workers' Compensation Court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the

employee receives an award.

The balance of § 48-125(1) pertains to the allowance of an attorney fee in the event that either an employee or employer appeals from an award of the Workers' Compensation Court. Section 48-125(2) provides in part:

When an attorney's fee is allowed pursuant to this section, there shall further be assessed against the employer an amount of interest on the final award obtained, computed from the date compensation was payable, as provided in section 48-119, at a rate equal to the rate of interest allowed per annum under section 45-104.01, as such rate may from time to time be adjusted by the Legislature. Interest shall apply only to those weekly compensation benefits awarded which have accrued at the time payment is made by the employer.

Referring to § 48-125, Deyle contends that he is entitled to additional sums for waiting time, an attorney fee, and interest on account of the delay in Bituminous' satisfying the award modified in *Bituminous I*. To support his contention, Deyle directs our attention to *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 783, 408 N.W.2d 280, 288 (1987), in which we held that § 48-125 authorizes a "50-percent payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation." However, *Mendoza* involved an action which an employee was compelled to file because, in the absence of a reasonable controversy about compensability of the employee's claim, the employer neglected payment of compensation in the form of disability benefits due as the result of the employee's work-related injury and disability.

Characterizing the additional sums under § 48-125 as "penalties," Bituminous urges the proposition that penalty provisions are not applicable to the late payment of medical and nursing expenses and invites us to examine *Eichholz v. Bell*, 410 So. 2d 211 (Fla. App. 1982), as authority supporting the foregoing proposition. We have studied *Eichholz*, which we set forth in its entirety:

PER CURIAM.

The order of the trial court transferring this cause to the county court is REVERSED. § 26.012(2)(a), Fla.Stat. (Supp.1980); § 34.01 Fla.Stat. (Supp.1980).

MILLS, WENTWORTH and THOMPSON, JJ., concur.

Although some may feel that the concurrence in *Eichholz* captures the essence of the moment, there is something to be said about the majority's opinion in *Eichholz*. However, we find nothing persuasive in *Eichholz* to assist us in resolving the question raised by Deyle's cross-appeal.

Deyle urges us to adopt a uniform and constant meaning for "compensation" in the Nebraska Workers' Compensation Act. In *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989), referring to Nebraska statutes for a proceeding to dissolve a marriage, we observed that " '[t]o reside' and its corresponding noun *residence* are chameleon-like expressions, which take their color of meaning from the context in which they are found." *Id.* at 749, 441 N.W.2d at 904. The same may be said of *compensation* inasmuch as the word is used frequently throughout the Nebraska Workers' Compensation Act.

The meaning of "compensation" in § 48-125 is taken from the context in which the word is used in the statute. Section 48-125 provides that all "compensation payable under the Nebraska Workers' Compensation Act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death." How an employee's recoverable medical expenses are "payable periodically in accordance with the methods of payment of wages" defies rational analysis and would necessitate the most strained and illogical interpretation or complete distortion of § 48-125 to equate "compensation" with medical expenses recoverable under the Nebraska Workers' Compensation Act. "Compensation," used in § 48-125(1) in reference to additional sums for waiting time, an attorney fee, and interest, means periodic disability or indemnity benefits payable on account of the employee's work-related injury or death. Inasmuch as Deyle's claim as a result of *Bituminous I* involved only unpaid medical expenses, Deyle is not entitled to the "fifty percent"

sum authorized by § 48-125(1). Also, the attorney fee allowable under § 48-125(1) depends on the employer's neglect to pay "compensation"—disability or indemnity benefits—"for thirty days after injury." For the same reason expressed in disallowing Deyle a sum for "waiting time," an attorney fee must also be disallowed to Deyle under § 48-125(1). Interest authorized in § 48-125(2) "shall apply only to those weekly compensation benefits awarded which have accrued at the time payment is made by the employer." Under § 48-125(2), interest clearly relates to "weekly compensation"—the periodic payment of disability or indemnity benefits under the Nebraska Workers' Compensation Act. Moreover, § 48-125(2) provides: "When an attorney's fee is allowed pursuant to this section, there shall further be assessed against the employer an amount of interest on the final award obtained . . . ." Therefore, interest under § 48-125(2) is precluded in Deyle's case for two reasons. First, interest under § 48-125(2) is related to "weekly compensation benefits awarded," and, second, Deyle is not entitled to an attorney fee under § 48-125(1), a prerequisite to the assessment of interest pursuant to § 48-125(2). Whether the additional sums for the dilatory situation mentioned in § 48-125 should be extended to an employer's delay in payment of any award, judgment, or order of the Workers' Compensation Court is a matter for the Legislature, not for this court, which must apply the unequivocal language of § 48-125.

The Workers' Compensation Court properly denied Deyle the additional sums authorized by § 48-125. For that reason, the order of the Workers' Compensation Court is affirmed on the issue of additional sums under § 48-125.

*Postjudgment Interest.*

As recently reaffirmed, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. *Thomas v. Omega Re-Bar, Inc., ante* p. 449, 451 N.W.2d 396 (1990).

Neb. Rev. Stat. § 48-152 (Reissue 1988) delineates the compensation court's subject matter jurisdiction by empowering it "to administer and enforce all of the provisions of the Nebraska Workers' Compensation Act, and any

amendments thereof, except such as are committed to the courts of appellate jurisdiction." Although that which is implied is as much a part of a statute as that which is expressed, *State, ex rel. Johnson, v. Consumers Public Power District*, 142 Neb. 114, 5 N.W.2d 202 (1942), it is not within the province of this court or any other tribunal to read a meaning into a statute which is not warranted by its language, *Behrens v. American Stores Packing Co., ante* p. 25, 449 N.W.2d 197 (1989). There is nothing in the pertinent language of § 48-152 which grants the compensation court subject matter jurisdiction to determine the applicability of the provisions of chapter 45 of the statutes of this state to its judgments.

Indeed, the language of § 48-152 is expressly to the contrary; it specifically limits the compensation court's subject matter jurisdiction to the administration and enforcement of the provisions of the act. No part of the act is found in chapter 45; it is contained in Neb. Rev. Stat. §§ 48-101 through 48-1,112 (Reissue 1988). Nor can it in any proper sense be implied that the compensation court's power to administer and enforce the act carries with it the power to interpret those portions of chapter 45 which deal with postjudgment interest. The applicable rule is that in construing statutes, implications will not be indulged which are necessarily contrary to and incompatible with the spirit and purpose of the enactment being construed. *City of Lincoln v. Nebraska Workmen's Compensation Court*, 133 Neb. 225, 274 N.W. 576 (1937). Section 48-152 expressly states the objective of the act is to create a court for the "efficient administration" of the act. It seems obvious that to encumber this special court of limited jurisdiction with the obligation to interpret and construe statutes which are not a part of the act is necessarily incompatible with that stated objective. Such an obligation will delay and thereby impede the administration of the act, which is designed to quickly resolve disputes concerning whether an employer owes an employee benefits under the act.

In addition, such an implication is specifically negated by § 48-188, which provides:

> Any order, award, or judgment by the Nebraska Workers' Compensation Court, or any judge thereof,

certified to by the clerk of the compensation court or of the Supreme Court, certified to by the clerk thereof, for compensation pursuant to the Nebraska Workers' Compensation Act may, as soon as the same become conclusive upon the parties at interest, be filed with the district court of any county or counties in the State of Nebraska upon the payment of a fee of two dollars to the clerk of the district court or courts where such order, award, or judgment is so filed, whereupon such order, award, or judgment shall have the same force and effect as a judgment of such district court or courts, and all proceedings in relation thereto shall thereafter be the same as though the order, award, or judgment had been rendered in a suit duly heard and determined by such district court or courts.

We conclude, therefore, that the Nebraska Workers' Compensation Court has no authority to determine issues relating to postjudgment interest.

## CONCLUSION

The judgment of the Workers' Compensation Court is affirmed, as modified in this opinion. Because Bituminous has obtained a reduction in the award of the Workers' Compensation Court, Deyle is not entitled to an attorney fee for services of his lawyer in this court. See § 48-125(1) (allowance of an attorney fee in an appeal from an award).

AFFIRMED AS MODIFIED.

WHITE, J., concurring in part, and in part dissenting.

I agree with the majority opinion, save that part which denies to the Workers' Compensation Court the authority to determine whether its judgments accrue postjudgment interest, for the reasons set forth in the dissent of Fahrnbruch, J., in *Thomas v. Omega Re-Bar, Inc., ante* p. 449, 451 N.W.2d 396 (1990), in which I joined.

FAHRNBRUCH, J., joins in this concurrence and dissent.