DOUGLAS ROUSEY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Central Illinois Public Service Company, Appellant).

Fourth District (Industrial Commission Division)   No. 4—91—0333WC

Opinion filed January 30, 1992.—Rehearing denied March 12, 1992.

Gary A. Brown and Liesl G. Smith, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

James C. Serkland, of Serkland & Muelhausen, of Chicago, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On September 20, 1983, claimant fell from a 35- to 40-foot height and suffered a depressed skull fracture, a contrecoup brain injury to the left side and a fractured right clavicle. Following five months of hospitalization, claimant returned home, where he has lived continuously to the present time. The parties stipulated claimant is permanently and totally disabled due, in part, to his perma-

nent brain injuries. The arbitrator and Industrial Commission (Commission) denied claimant's wife's request for reimbursement for past and prospective maintenance expenses. The circuit court reversed, concluding claimant's spouse's household services should not be considered gratuitous simply because she is married to claimant and, although claimant's visible injuries are minimal, his brain injury requires that he be "supervised" on a full-time basis. Respondent appeals, contending the circuit court's award of maintenance expenses for claimant's wife's services is against the manifest weight of the evidence.

The facts are not in dispute. After claimant was released from the hospital he returned home to his wife and two children. They subsequently moved in with claimant's father and have lived together continuously since early 1985.

Claimant's wife testified at arbitration that claimant operates at the level of a six to seven year old and requires constant care and attention out of fear he might do something inadvertently harmful to himself. On one occasion, claimant, who had been an electrician, tried to fix a lamp but accidentally set it on fire.

Despite the guidance and supervision claimant's wife provides, claimant is able to leave the house on his own to visit nearby friends and an automobile repair garage a short distance from the house. Claimant is also capable of driving an automobile and can hunt and use a weapon. At home, claimant helps out with household chores by folding clothes and washing windows. He is able to dress and feed himself and tend to his own personal hygiene.

Claimant's only noticeable physical deficit is a limp and the fact he is sometimes unsure of his footing when he walks or steps, although he does not use any medical appliances such as a cane or a wheelchair. Mentally, claimant can become agitated and frustrated and the presence of his two young children sometimes bothers him. He is unable to concentrate for periods of time in excess of an hour or two.

Claimant's spouse testified he has received no medical treatment since June 1985 and that she has had no formal medical training and provides no medical assistance of any sort to him. She cooks meals for the entire family and cleans house but conceded she would do so irrespective of whether claimant was injured. She also handles all the family finances and had done so to a large extent prior to the accident. Reimbursement was sought for what claimant's spouse described as "guarding services" because an individual

needs to be with claimant in the home to watch him and help him if he requires it.

The testimony of Dr. Eilers, who had examined claimant in 1985, was admitted. Claimant suffers from significant cognitive deficits due to his injuries. Because of what the doctor termed a classic traumatic brain injury pattern, claimant can become agitated and is not completely independent but needs supervision for his own safety. His judgment is sometimes subject to question and he suffers from recent memory impairment. Claimant nonetheless is alert and oriented and is able to comply with certain commands which require only one or two steps. He can become frustrated, however, when more complex tasks are required.

Dr. Eilers believes that claimant's condition requires that someone be with him at all times because, although he does not need "guarding," he could be impulsive because of his brain damage and do things such as forget to turn off the gas on the stove. The person attending claimant would not, in Eilers' opinion, need any medical training. Although claimant could become aggressive, Eilers was unaware of any actual episodes of violent behavior demonstrated by claimant. In Eilers' words, the supervision claimant requires is akin to that one would provide a child.

The arbitrator denied the spouse's claim for maintenance expenses because she was not performing necessary medical, surgical, or hospital services within the meaning of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(a)). Rather, the arbitrator concluded she was performing the normal duties of a spouse. The Commission affirmed the decision of the arbitrator. On review, the circuit court reversed that aspect of the Commission's decision, concluding claimant's brain injury required supervision on a full-time basis and such care should not be considered gratuitous simply because claimant is married to the individual providing the care.

On appeal, respondent contends the Commission's determination that claimant's wife was not entitled to maintenance care reimbursement was not against the manifest weight of the evidence.

■■ Section 8(a) of the Act provides in pertinent part:
"If as a result of the injury the employee is unable to be self-sufficient the employer shall further pay for such maintenance or institutional care as shall be required." Ill. Rev. Stat. 1989, ch. 48, par. 138.8(a).

The parties stipulate that claimant is permanently and totally disabled from pursuing further employment with respondent. They

also agree that claimant suffers from a substantial brain injury, although he has made a remarkable recovery given the nature of the accident and the severity of the injuries. It is also clear claimant is self-sufficient to the extent he is able to tend to his basic needs and get about in the community on his own to a limited extent. He can feed and clothe himself without assistance. He can leave the house for trips in the neighborhood unattended. He drives an automobile, hunts, and performs certain limited routine household chores. He interacts with his children and is able, to a limited extent, to enjoy certain routine pleasures such as watching television.

Nevertheless, claimant's mental capacity is limited and he must be looked after to the extent one would supervise a child. The fear is that claimant might undertake some task beyond his capabilities and accidentally injure himself. Claimant's spouse, however, provides no medical assistance of any sort to claimant and none is concededly required.

In *Burd v. Industrial Comm'n* (1991), 207 Ill. App. 3d 371, 566 N.E.2d 35, this court considered the issue of when home care services were appropriately compensated under section 8(a) of the Act. In *Burd*, the services were provided by a nonrelative, a fiancee. Claimant's work injury rendered him a paraplegic and his treating physician prescribed nine home modifications to allow claimant to live independently without nursing care. Because of the insubstantial value of claimant's home, however, these changes were never made. According to claimant's doctor, he could not exist in the house without the assistance of either a "home care service or a 'significant other.'" (*Burd*, 207 Ill. App. 3d at 374, 566 N.E.2d at 37.) When the employer-paid assistance from home care services was terminated, claimant's live-in fiancee began assisting claimant in entering and exiting the home, tending to claimant's personal hygiene, and performing general housekeeping tasks.

In reviewing whether an award for these home care services was appropriate, the court reviewed cases from other jurisdictions and determined that the record supported the award. Significant to *Burd* were two factors, the type of duties and the status of the party rendering them. In that case, claimant required 24-hour-per-day nursing care because of his paraplegia, which his fiancee was not legally obligated to provide. In the instant case, the assistance rendered to claimant was provided by his spouse and these activities were described alternatively as "guarding" services or the passive supervision which a baby-sitter might provide for a child.

The circuit court concluded that these services constituted something other than ordinary household duties and it was inappropriate to deny a claim for maintenance services simply because a spouse was providing them. We disagree.

■ A majority of cases have recognized the general rule that shopping, cooking, and other household services performed by a spouse or other family members are considered gratuitous and cannot form the basis for an award for attendant care services. (*De-Long v. 3015 West Corp.* (Fla. App. 1986), 491 So. 2d 1306.) The rationale for denying compensation for ordinary household duties when performed by a spouse is that a spouse performs such activities for both parties as part of the marital relationship. (*Currier v. Roman L. Hruska United States Meat Animal Research Center* (1988), 228 Neb. 38, 421 N.W.2d 25.) As one court observed, one spouse has agreed to care for the other " 'in sickness and in health.' " (*Spiker v. John Day Co.* (1978), 201 Neb. 503, 530, 270 N.W.2d 300, 314.) For this reason, a distinction has been drawn, for compensation purposes, based on the status of the individual performing those services. Although not necessary to the decision in *Burd*, this court embraced that concept when it stated that mere household duties provided by a spouse who is otherwise "obligated" to perform them by virtue of the marital relationship are not compensable, whereas a different result may obtain when an individual not legally or otherwise required to perform the services does so.

Notwithstanding claimant's wife's status as his spouse, she argues that the services she performs are more than mere household duties. While the evidence supports the conclusion that someone ought to be with claimant to watch over him, it is equally clear that the supervision offered is precisely the type which someone might give to a child in the home. There is also evidence that claimant is at least partially independent to the extent he is able to travel in the neighborhood, drive a car unsupervised, and handle a weapon when hunting.

■ Professor Larson has said that while "attendance in the nursing sense is covered by statutes providing for reimbursement for maintenance expenses, a line has been drawn between nursing attendants and services that are, in essence, housekeeping. (2A A. Larson, Workmen's Compensation §61.13(d)(4), at 10—892 (1989).) It is conceded that claimant is not receiving any medical or nursing services of any sort.

■ The question of whether the kind of assistance claimant's spouse provides constitutes maintenance within the meaning of the

Act is one of fact for the Commission to determine. The fact that the injury has affected claimant's mental processes, standing alone, is not determinative. In the absence of medical care or active attendance to claimant's basic needs, the Commission's determination that claimant's spouse is performing household duties which are not compensable within the meaning of section 8(a) of the Act is not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Sangamon County, insofar as it overturned the Industrial Commission decision on this issue, is reversed, and the Industrial Commission's decision is reinstated in its entirety.

Affirmed in part; reversed in part; Industrial Commission order reinstated.

EGAN, WOODWARD, STOUDER, and LEWIS, JJ., concur.