BROWN v ELLER OUTDOOR ADVERTISING COMPANY

Docket No. 51038. Submitted June 8, 1981, at Detroit.—Decided
November 30, 1981.

Walter E. Brown applied for and was awarded workers' compen-
sation benefits for injuries sustained while employed by Eller
Outdoor Advertising Company. He subsequently filed a petition
for adjustment of nursing care benefits so that his wife could be
compensated for the services which she rendered to him when
no nursing aides were present in their home. An administrative
law judge ordered that previous voluntary payments made to
Brown's wife for her service be increased. Brown applied for
review of the decision, alleging that his wife was entitled to a
greater increase in payment for her services. The Workers'
Compensation Appeal Board rejected Brown's contentions and
affirmed the judge's decision. Brown then sought leave to
appeal in the Court of Appeals, which, in lieu of granting leave,
ordered the board's decision vacated and remanded the case to
the board for a calculation of the value of Mrs. Brown's
services based on considerations of the extent of Brown's need
for specialized care, the number of hours required of Mrs.
Brown to render the care, and the hourly wage to be applied.
The board issued a revised opinion, awarding Mrs. Brown
payment for the time which she spent attending to her hus-
band as well as the time for which she was required to be "on
call". His employer and Continental National American Insur-
ance Group, its insurer, appeal this subsequent decision by
leave granted. *Held:*

The board failed to determine adequately the type of care
needed by Mr. Brown as directed by the order of remand. The
case is remanded for a determination of the type of care
needed.

Reversed and remanded.

Workers' Compensation — Nursing Services — Spouses.

An employer must furnish medical services or other attendance
or treatment as needed to an employee who received a personal

Reference for Points in Headnote
82 Am Jur 2d, Workmen's Compensation § 394.

injury arising out of and in the course of his employment, and where it is determined that the employee is in need of 24-hour home care and that part of the care can be performed by the employee's spouse the employer must provide payment for the spouse's services notwithstanding the fact that the spouse is able to perform household tasks while not in actual attendance of the employee and is merely "on call" (MCL 418.315; MSA 17.237[315]).

*Leonard S. Herman,* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Edward K. Pedersen* and *Jonathan T. Kopit),* for defendant.

Before: D. C. RILEY, P.J., and CYNAR and H. R. GAGE,* JJ.

CYNAR, J. Defendants appeal by leave granted from a decision by the Workers' Compensation Appeal Board (hereinafter appeal board) following a vacation of its previous order in the case and a remand to the appeal board by the Court of Appeals, awarding plaintiff benefits for nursing care provided by his wife. Benefits were awarded at the minimum wage for nurse's aides for all hours of the day that an outside aide was not present in the home with time and a half the hourly rate for all hours in excess of 40 per week.

Plaintiff sustained catastrophic spinal cord injuries in 1969 when he fell from a scaffold during the course of his employment with defendant. The injuries rendered him unable to move any part of his body below his neck with the exception of some useless movement in one of his arms. After undergoing extensive periods of hospitalization, plaintiff returned home in 1970. According to the testimony of plaintiff's wife, the insurer's representative

---

* Circuit judge, sitting on the Court of Appeals by assignment.

urged plaintiff to purchase a new house so that he could be cared for at home. A house was purchased, the insurer making a 25 percent downpayment. The insurance agent also arranged to pay plaintiff's wife (later plaintiff directly) $100 per week. Defendants claimed that this was compensation for the wife's nursing services; plaintiff's wife claimed that it was for house payments.

Initially, defendants provided two nursing aides for the care of plaintiff in his home. The combined hours of this attendance approximated 12 per day. Plaintiff's wife cared for him for the balance of the hours of each day.

After a time, plaintiff's wife became irritated with the lack of privacy in her home due to the presence of the aides. She spoke to the insurance agent concerning this and suggested that defendants discontinue the use of one of the aides and pay her (plaintiff's wife) for performing these duties. One of the aides thereafter was discontinued, but defendants declined to pay plaintiff's wife. At the time of the hearing in this case the remaining aide worked approximately seven hours per day, seven days per week.

Due to the extent of plaintiff's injuries, his care requires much attention. He cannot feed or clothe himself. His legs, hands, and fingers must be exercised twice a day. He must be turned every two to four hours to prevent bedsores. While in his wheelchair he must be moved approximately every hour. He has no control over his bowels or bladder. He cannot even cough alone. When he needs to cough someone must push on his solar plexus.

On December 14, 1973, plaintiff filed a petition for adjustment of nursing care benefits. The decision of the administrative law judge, affirmed by the appeal board, was vacated by this Court be-

cause it erroneously gave binding effect to a prior agreement of the parties without regard to the provisions of MCL 418.831; MSA 17.237(831).

The case was remanded with the following instructions:

"On remand, in arriving at a calculation of the value of services rendered by Mrs. Brown, the board should consider *inter alia:* the extent of plaintiff's need for specialized care and attention by a nurse's aide or other appropriate caretaker, the number of hours which Mrs. Brown must devote to this specialized care and attention, and the hourly wage for a nurse's aide or other caretaker who could provide the care which plaintiff needs. See *Dunaj v Harry Becker Co,* 52 Mich App 354 (1974), *lv den* 394 Mich 838 (1975)."

The focus of the subsequent opinion filed by the appeal board was on whether defendants must pay for the time that plaintiff's wife is "on call". That is, must defendants pay for time during which plaintiff's wife is not performing a specific activity for plaintiff but must remain nearby should her services be necessary? The majority appeal board opinion answered in the affirmative:

"My view has been from the very beginning that plaintiff must have someone with him *at all times* for nursing and custodial purposes because of his paralytic condition, and that his wife should be directly reimbursed at the appropriate nurse's aide hourly rate for all hours when outside help is not present. I continue to be utterly bewildered by contentions to the contrary. There is certainly nothing untoward in this proposed result, or in awarding around-the-clock nursing care based both on the actual provision of needed personal services and the custodial aspects or necessities of the particular situation."

Defendants' position is accurately stated by the minority opinion of the appeal board:

"While it is argued, as my colleague forcefully argues, that time 'on-call' should be reimbursable time, this position as applied to a family member misses or ignores the *dual* role filled by a spouse or other resident family members in such a case. 'On call' time can very well be paid to a municipal firefighter who comes from his home to a firestation to await unwanted blazes around-the-clock, or to an outside aide called to the bedside of patient in a home not his own. It is inappropriate to pay same here where the individual to be reimbursed also lives in the same dwelling. *If this distinction were not valid and to be made, there would be no reason for the Kushay Court to separate nonreimbursable duties* (housecleaning, meal preparation, laundry, etc.) *from reimbursable attendance* (bathing and dressing a disabled person, serving meals in bed, etc.)."

In *Kushay v Sexton Dairy Co*, 394 Mich 69; 228 NW2d 205 (1975), the Supreme Court held that ordinary household tasks are beyond the scope of an employer's obligation. The appeal board minority opinion, quoted above, apparently considers any finding that plaintiff needs 24-hour care tantamount to payment for household tasks. We do not agree.

The Court in *Kushay, supra,* 74-75, stated what the relevant considerations are:

"The language of the statute [MCL 418.315; MSA 17.237(315)], 'reasonable medical, surgical and hospital services and medicines or other attendance or treatment', focuses on the *nature of the service* provided, not the status or devotion of the provider of the service. Under the statute, the employer bears the cost of medical services, other attendance and treatment. If services within the statutory intendment are provided by a spouse, the employer is obligated to pay for them.

* * *

"Under the statute it is the employer's duty to pro-
vide medical services 'or other attendance or treatment
* * * *when they are needed'*. (Emphasis supplied.) The
appeal board did not find that the services rendered by
Daisy Kushay were not 'needed'." (Footnote omitted;
emphasis added.)

Thus, the fact that a spouse is able to perform
household tasks during those times when not actu-
ally in attendance with the patient is irrelevant
under the circumstances of this case. If the ser-
vices were provided by someone other than plain-
tiff's wife, that person would, we assume, pursue
his or her own interests within the limits of the
job. Such person might read, knit, watch televi-
sion, or nap during those times in which he or she
is simply "on call". The fact that Mrs. Brown
might use her "on call" time to perform household
tasks does not alter the "nature of the service
provided" or the "need" for the service. The
Court's reference to household tasks in *Kushay*
was not meant to suggest that under the circum-
stances of this case the time used in performing
each individual service for plaintiff should be
added up or that the time used in performing
household tasks should be subtracted from the
whole. The appeal board found that 24-hour care is
needed. Plaintiff's wife provides the service for 17
of those 24 hours and is entitled to payment for
the same.[1]

A finding that 24-hour care is needed addresses

---

[1] See *Filion v Art Himbault Trucking Co*, 103 Mich App 471; 302
NW2d 892 (1981). The defendants in *Filion* similarly argued that an
award for nursing care benefits should be calculated on the amount of
time the injured employee's parents actually spent in performing
nursing services for their son. This Court upheld an appeal board
award of 8 hours in each 24-hour period. The plaintiffs in that case
did not claim that they were entitled to any more than eight hours.

the "when they are needed" aspect of the issue, *id.,* 75, and appropriately complies with part of our remand order. Nonetheless, it appears that the appeal board did not adequately direct its attention to the specific "nature of the services" question. *Id.,* 74. Our remand order directed the appeal board to consider plaintiff's need for a nurse's aide or "other appropriate caretaker". Rather than make a finding as to the type of care needed, the appeal board opinion uses the phrases "nursing care" and "custodial attendance" interchangeably where they may or may not be interchangeable under the circumstances of this case. The fact that plaintiff needs 24-hour care does not automatically mean that only nursing aide services will do. Perhaps some "other appropriate caretaker" could handle the care during some portion of the 24-hour period. The appeal board opinion does not address this question adequately.

Remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.