MORRIS v DETROIT BOARD OF EDUCATION

Docket No. 218475. Submitted August 9, 2000, at Lansing. Decided November 3, 2000, at 9:10 A.M.

Florence C. Reagan sought in the Bureau of Worker's Disability Compensation benefits for nursing or attendant care she provided to her husband, Charles T. Reagan, during the five-year period immediately preceding his death when he was essentially rendered bedridden by a heart attack and received an open award of worker's compensation benefits paid by the Detroit Board of Education. A worker's compensation magistrate awarded Mrs. Reagan nursing care benefits of 120 hours a week after determining that she was on call to provide nursing care to Mr. Reagan whenever she was not at her regular job as a nurse's aide. The Worker's Compensation Appeal Board reversed the magistrate's decision and remanded the matter, concluding that Mr. Reagan did not require around-the-clock nursing care and that Mrs. Reagan should be awarded nursing care benefits only for actual time spent providing nursing care to Mr. Reagan. On remand, another magistrate agreed with the original magistrate's conclusion that Mrs. Reagan provided nursing care to Mr. Reagan whenever she was not at her regular job. The Worker's Compensation Appellate Commission reversed the second magistrate's decision and remanded the matter for a determination of actual hours of nursing care. Mrs. Reagan died in the interim, and the magistrate simply returned the record to the WCAC, which ultimately denied nursing care benefits in the absence of proof of actual hours of nursing care. Carol A. Morris, as personal representative of the estate of Mrs. Reagan, appealed by leave granted.

The Court of Appeals *held*:

1. Nursing care benefits under § 315 of the Worker's Disability Compensation Act, MCL 418.315; MSA 17.237(315), are payable not only for actual nursing care provided, but also for time spent on call to provide nursing care as long as either is necessary. The matter must be remanded to the WCAC for a determination whether actual nursing care provided by Mrs. Reagan to Mr. Reagan or time she spent on call to provide nursing care for him was necessary such that nursing care benefits should be awarded.

2. The WCAB correctly determined that, under the two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2), any nursing care benefits awardable in this case is limited to the two years that immediately preceded the filing of the claim for nursing care benefits.

Reversed in part, affirmed in part, and remanded.

WORKER'S COMPENSATION — NURSING OR ATTENDANT CARE.

Nursing care benefits are payable under the Worker's Disability Compensation Act for time spent on call to provide nursing or attendant care to an employee receiving worker's compensation for a disabling personal injury or occupational disease as long as such time is necessary for the care of the employee (MCL 418.315; MSA 17.237[315]).

*Charles G. Gale,* for Carol A. Morris.

*Charfoos, Reiter, Peterson, Holmquist & Pilchak, P.C.* (by *Kenneth E. Jones*), for Detroit Board of Education.

Before: KELLY, P.J., and WHITBECK and COLLINS, JJ.

PER CURIAM. Plaintiff Carol Morris, personal representative of the estate of Florence Reagan, deceased, appeals by leave granted the Worker's Compensation Appellate Commission's (WCAC) order affirming the magistrate's denial of benefits for attendant care services. We reverse in part, affirm in part, and remand.

I. BASIC FACTS AND PROCEDURAL HISTORY

In 1979, the Worker's Compensation Appeal Board (WCAB) granted Charles Reagan an open award of benefits for a disabling heart attack. This heart attack left Charles Reagan bedridden most of the time. According to his physician, he could walk with a walker or use a wheelchair and he sometimes needed no assistance with daily activities. His wife, Florence Reagan, was a nursing assistant or nurse's aide and was able to care for him until he died in 1985. In July 1985, Flo-

rence Reagan applied for nursing care benefits, reflecting care she provided for her husband between 1979 and his death.

According to Florence Reagan, she woke her husband at 6:00 A.M., dressed him, and then fed him. She prepared his lunch and stored it in a portable refrigerator located in his bedroom so he could retrieve it during the day. Because her husband had a catheter and his bedroom was equipped with a television, stereo, and telephone, all of which he could access from his bed, he did not need to leave his bed frequently. Florence Reagan left for her job as a nurse's aide at around 6:45 A.M. She then worked from 7:00 A.M. until 3:00 P.M., for four or five days a week. While she was working, she called her husband every two hours to check on him and had his sister stop in to see him. Florence Reagan typically returned home from work around 3:30 P.M., at which time she took care of household matters and attended her husband.

In 1988, in light of this evidence, the magistrate concluded that Florence Reagan was "on call" full-time to provide care for her husband, except when she was at work. The magistrate awarded nursing care benefits for about 120 hours a week. The WCAB reversed this award, remanding the matter for additional testimony and a finding regarding the amount of time Florence Reagan spent specifically providing nursing care. Because he did not require full-time, around-the-clock assistance, according to the WCAB, Charles Reagan was entitled to nursing care benefits only for the amount of time Florence Reagan actually performed those duties.

On remand, a new magistrate agreed with the earlier magistrate's conclusion that Florence Reagan pro-

vided her husband full-time nursing care while she was not at work. The WCAC again reversed, finding that the magistrate failed to follow its instructions to determine the specific number of hours Florence Reagan spent attending her husband. Despite specific instructions to the magistrate on second remand to make findings concerning the actual number of hours Florence Reagan spent caring for her husband, the magistrate simply returned the record to the WCAC because Florence Reagan died before the parties could hold a hearing. The WCAC ultimately denied all nursing benefits because Florence Reagan bore the burden of proving the number of hours she attended her husband, but failed to do so.

## II. ARGUMENTS ON APPEAL AND STANDARD OF REVIEW

Morris, Florence Reagan's personal representative, argues for her that the WCAC erred as a matter of law when it limited nursing benefits to the actual number of hours she attended her husband. Morris also argues that the WCAC erred in its 1990 order in limiting to the two years preceding the petition in this case any award of nursing benefits it would have granted had it received satisfactory factual findings. We review these questions of law de novo.[1] The recent Supreme Court decision in *Mudel v Great Atlantic & Pacific Tea Co*,[2] which clarifies that the courts apply an "any evidence" standard when reviewing a WCAC

---

[1] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000).

[2] *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691; 614 NW2d 607 (2000).

decision related to factual matters, does not alter this standard of review for purely legal questions.[3]

### III. NURSING CARE BENEFITS

The parties ask us to determine whether the WCAC appropriately applied a "stop-watch" method to calculate nursing benefits in this case. The WCAC would only award nursing benefits for the precise time a spouse or family member spends changing bandages, feeding, bathing, administering medication, or doing other tasks contemplated by MCL 418.315; MSA 17.237(315), at least in a case in which it concluded that the injured worker required less than twenty-four hours of care each day. Thus, from the WCAC's perspective, it needed a precise measurement of the number of hours each day Florence Reagan attended her husband pursuant to *Kushay v Sexton Dairy Co.*[4]

Morris, on behalf of Florence Reagan, argues, however, that this actual care standard is an inappropriate way to measure benefits. Rather, the amount of time compensable under MCL 418.315; MSA 17.237(315) includes the number of hours Florence Reagan was available to care for her husband, even if she was not directly providing care at every moment. She points out that in a commercial or professional setting, like a nursing home or a hospital, nurses are compensated for the amount of time they are available, not for the specific tasks they perform or the duration of those tasks. As Florence Reagan did throughout the proceedings in the administrative tribunal in this case,

---

[3] See *id.* at 709.

[4] *Kushay v Sexton Dairy Co*, 394 Mich 69; 228 NW2d 205 (1975).

Morris relies on *Brown v Eller Outdoor Advertising Co*[5] to support this argument.

The Michigan Supreme Court first addressed nursing care benefits in *Kushay, supra,* in which the claimant totally and permanently injured himself, thus being forced to spend about ninety percent of his time in bed.[6] Daisy Kushay, the claimant's wife, helped him with a variety of daily tasks, including bathing, dressing, medication, using the bathroom, driving him to appointments, and performing other personal care services, but the WCAB concluded that those efforts were simply things that a "dutiful wife" would ordinarily do for her husband and denied nursing benefits.[7] Construing MCL 418.315; MSA 17.237(315), which allows a spouse to recover the cost of "reasonable medical, surgical and hospital services and medicines or *other attendance* or treatment" that an injured worker needs, the *Kushay* Court rejected the WCAB's conclusion and stated:

> The language of the statute, "reasonable medical, surgical and hospital services and medicines or other attendance or treatment," focuses on the nature of the service provided, not the status or devotion of the provider of the service. Under the statute, the employer bears the cost of medical services, other attendance and treatment. *If services within the statutory intendment are provided by a spouse, the employer is obligated to pay for them.*
>
> Ordinary household tasks are not within the statutory intendment. House cleaning, preparation of meals and washing and mending of clothes, services required for the maintenance of persons who are not disabled, are beyond

---

[5] *Brown v Eller Outdoor Advertising Co,* 111 Mich App 538; 314 NW2d 685 (1981).

[6] *Kushay, supra* n 4 at 72.

[7] *Id.* at 71, 73.

the scope of the obligation imposed on the employer. *Serving meals in bed and bathing, dressing, and escorting a disabled person are not ordinary household tasks. That a "conscientious" spouse may in fact perform these services does not diminish the employer's duty to compensate him or her as the person who discharges the employer's duty to provide them.*

Under the statute it is the employer's duty to provide medical services "or other attendance or treatment . . . *when they are needed.*"[8]

While clearly defining an employer's obligation to pay for nursing or attendant care under MCL 418.315; MSA 17.237(315) in terms of the nature of the services at issue, the *Kushay* Court did not attempt to determine how to measure those services.

In *Brown, supra,* the plaintiff's injury prevented him from moving his body below his neck, except for some "useless" movement in one arm.[9] He required a great deal of attention and personal care, which his wife provided.[10] She eventually sought nursing care benefits and the WCAB found that the plaintiff required full-time nursing and custodial care.[11] The parties disputed whether the plaintiff should receive benefits for full-time care from his wife who, although "on call," performed tasks other than his direct nursing care. After considering *Kushay*,[12] this Court reasoned:

[T]he fact that a spouse is able to perform household tasks during those times when not actually in attendance with the patient is irrelevant under the circumstances of this case. If the services were provided by someone other

---

[8] *Id.* at 74-75 (emphasis supplied).
[9] *Id.* at 539.
[10] *Id.* at 540.
[11] *Id.* at 540-541.
[12] *Id.* at 542.

than plaintiff's wife, that person would, we assume, pursue his or her own interests within the limits of the job. Such person might read, knit, watch television, or nap during those times in which he or she is simply "on call." The fact that Mrs. Brown might use her "on call" time to perform household tasks does not alter the "nature of the service provided" or the "need" for the service. The Court's reference to household tasks in *Kushay* was not meant to suggest that under the circumstances of this case the time used in performing each individual service for plaintiff should be added up or that the time used in performing household tasks should be subtracted from the whole. The appeal board found that 24-hour care is needed. Plaintiff's wife provides the service for 17 of those 24 hours and is entitled to payment for the same.[13]

Although only mentioned in a footnote,[14] this Court's decision in *Brown* followed precedent set in an opinion released earlier that year, *Filion v Art Himbault Trucking Co*.[15] Like *Brown*, *Filion* endorsed compensation for on-call time. In fact, the Court specifically rejected limiting compensation to the time familial or spousal caregivers actually spend caring for the injured person.[16]

In effect, *Brown* and *Filion* recognized that being available to give care, especially when the need for care can arise suddenly and unpredictably, is compensable when it is necessary. The Detroit Board of Education (the Board), however, implicitly contends that *Brown* conflicts with *Kushay* and is, in any event, distinguishable on factual grounds. We cannot agree with either proposition.

---

[13] *Id.* at 543.

[14] *Id.* at 543, n 1.

[15] *Filion v Art Himbault Trucking Co*, 103 Mich App 471; 302 NW2d 892 (1981).

[16] *Id.* at 478-479.

First, because *Kushay* did not attempt to establish how to calculate attendant or nursing care, whether that includes on-call time or not, there is no reasonable way to read it as conflicting with *Brown*. Certainly, if the cases did conflict, *Kushay* would control.[17] However, *Brown* actually follows *Kushay* in that it looked to the nature of the services rendered, rather than the family or spousal relationship between the injured worker and the caregiver, to determine if they were compensable. Having reviewed the case law construing *Kushay* in the context of when attendant care is compensable, we cannot find any opinions that hold that *Kushay* prohibits compensation for necessary on-call time. The Board has not provided us with any authority making that point. Although not explaining which method the magistrate used to calculate the compensable hours, cases following *Kushay* that involve injured workers who required less than literally constant care hint that compensation is available for this on-call time.[18]

As for the second component of the Board's argument, that *Brown* is factually distinguishable, *Brown* established a legal principle that can be applied in every case, namely, that on-call care is compensable under the statute. Surely we can see the possibility that, over time or because of specific events like sur-

---

[17] See generally *People v Mitchell*, 428 Mich 364, 369; 408 NW2d 798 (1987).

[18] For example, in *Trejo v Michigan Sugar Co*, 133 Mich App 753, 758-759; 350 NW2d 314 (1984), the injured worker required help going to the bathroom and moving around. The opinion did not, however, suggest that he needed more intensive care from his wife, such as physical therapy or being fed, leaving open the possibility that during some of the compensable time his wife was simply available to respond to his needs as necessary.

gery, an injured worker may need more or less on-call attendant care during certain times. Whether this care is compensable depends solely on whether it was necessary. In other words, compensation does not depend on whether the care can be categorized as "around-the clock" or part-time as long as it is necessary.

That the injured worker in *Brown* may have required more on-call care than Charles Reagan is irrelevant to the WCAC's decision to refuse to compensate Florence Reagan for *necessary* on-call care, no matter how much or how little of this on-call care she provided. This was an error of law irrespective of any support in the record for the amount of time she spent being on-call. The WCAC was not free to disregard this Court's ruling in *Brown*.[19] The unfortunate effect of this legal error is that it forced a series of remands in order to determine the precise amount of actual caregiving so that the Board could avoid compensating Florence Reagan for on-call time. As we noted, Florence Reagan died in the interim. The delay in this case therefore ultimately denied Florence Reagan compensation during her lifetime.

Even if we were so inclined, we do not have the authority to quarrel with the WCAC's determination that the magistrate lacked the necessary evidentiary support to conclude that Charles Reagan required care twenty-four hours each day.[20] Nevertheless, we are hard pressed to explain the WCAC's decision to deny *all* attendant care benefits in this case even under its erroneous conclusion that it needed a pre-

---

[19] *Straman v Lewis*, 220 Mich App 448, 451; 559 NW2d 405 (1996).
[20] See *Mudel, supra* n 4.

cise accounting of the actual time Florence Reagan spent providing those services. Minimally, the WCAC should have awarded her compensation for the approximately one hour each morning it found that she had spent dressing her husband and preparing his meals.

On remand, the WCAC is still free to conclude that Charles Reagan only *needed* part-time care and, therefore, Florence Reagan was only entitled to compensation for the part-time care she rendered, whether performing actual services or being on-call.[21] With this freer view of the evidence, we are hopeful that the record as it currently stands is sufficient to determine a reasonable number of hours Florence Reagan took care of her husband based on her testimony describing the many different tasks she performed for him.

### IV. THE TWO-YEAR-BACK RULE

Morris also argues that, contrary to the WCAB's 1990 opinion, the two-year-back rule[22] does not apply to

---

[21] Without intending to cross the boundary between questions of law and fact, we must note that this case illustrates the difference between necessary care and available care. The record suggests that Florence Reagan made a number of practical accommodations for her husband because she had to work. For instance, she placed a small refrigerator near his bed so that, while she was away from the house, he could eat the food she prepared for him. He also used a catheter to avoid trips to the bathroom. Although apparently effective, this sort of ability to accommodate an injured worker's disability when care is not available does not mean that care was unnecessary. Proof of necessity, not availability, is the key for compensation under the statute. MCL 418.315; MSA 17.237(315). We do not ask the WCAC to reconsider whether Charles Reagan required care twenty-four hours a day. Nor do we attempt to resolve the parties' competing views of Charles Reagan's health and capacity to care for himself. Rather, we make this observation so that, in future cases, the WCAC can distinguish between injured workers who can delay their need for care until the time when care is available and injured workers who simply do not need as much care.

[22] MCL 418.381(2); MSA 17.237(381)(2).

this case. At the time Charles Reagan suffered his injury, MCL 418.381(2); MSA 17.237(381)(2) provided:

> Whenever weekly payments[23] are due an injured employee under this act, such payments shall not be made for any period of time earlier than 2 years immediately preceding the date on which the employee filed application for hearing with the bureau.

In *Franklin v Ford Motor Co*,[24] this Court held that the amendment applies retroactively and "any compensation" includes medical care. Notably, the definition of "medical care" in the Worker's Compensation Disability Act includes nursing care benefits.[25] Therefore, the WCAB properly decided that, pursuant to this rule, the claim for nursing care benefits for services already rendered was limited to the two years preceding Florence Reagan's petition for those benefits.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

KELLY, J. I concur in the result only.

---

[23] 1980 PA 357, effective January 1, 1982, substituted "weekly payments" for "any compensation."

[24] *Franklin v Ford Motor Co*, 197 Mich App 367, 370-371; 495 NW2d 802 (1992).

[25] See *Kosiel v Arrow Liquors Corp (On Remand)*, 211 Mich App 550, 555; 536 NW2d 567 (1995).