MICHAEL SIMMONS, APPELLEE AND CROSS-APPELLANT, V.
PRECAST HAULERS, INC., AND CHEROKEE INSURANCE
COMPANY, ITS WORKERS' COMPENSATION INSURER,
APPELLANTS AND CROSS-APPELLEES.

___ N.W.2d ___

Filed July 3, 2014.    No. S-13-848.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.

3. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

4. **Workers' Compensation: Health Care Providers.** Generally, pursuant to Neb. Rev. Stat. § 48–120 (Cum. Supp. 2012), an employee may be reimbursed for nursing care in the employee's home or at a nursing home, when such care is necessitated by a work-related injury, so long as the cost of the care is fair and reasonable.

5. ____: ____. There are three basic requirements that must be met before compensation may be rendered for care to an injured employee by the spouse in the home: (1) The employer must have knowledge of the employee's disability and need of assistance as a result of a work-related accident; (2) the care given by the spouse must be extraordinary and beyond normal household duties; and (3) there must be a means of determining the reasonable value of the services rendered by the spouse.

6. ____: ____. A person rendering necessary medical services to a disabled worker on an "as-needed" basis need not render the services during each moment of compensated time, but, rather, must be available to perform the needed services during the times when needed.

7. ____: ____. For compensability of in-home care, the focus is on the nature of the service provided, not the status or devotion of the provider of the service.

8. **Workers' Compensation: Attorney Fees.** Attorney fees in workers' compensation cases are allowable only pursuant to statutory authorization.

9. ____: ____. The determination of an award of attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Cum. Supp. 2012) must be calculated on a case-by-case basis.

Appeal from the Workers' Compensation Court: Laureen K. Van Norman, Judge. Affirmed.

Gregory D. Worth, of McAnany, Van Cleave & Phillips, P.A., for appellants.

Travis Allan Spier, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

Michael Simmons, while employed by Precast Haulers, Inc., sustained extensive injuries when he was run over by a fully loaded tractor-trailer. Precast Haulers concedes that the injuries and the related medical bills are compensable, but on appeal, Precast Haulers challenges the trial court's order requiring it to provide a wheelchair-accessible van; to pay for the in-home care provided by Michael's wife, Courtney Simmons; and to pay for Michael's attorney fees under Neb. Rev. Stat. § 48-125 (Cum. Supp. 2012). Michael cross-appeals for additional attorney fees.

## BACKGROUND

The parties stipulated that Michael was employed by Precast Haulers on October 14, 2011, when he sustained compensable injuries to his whole body during the course of his employment. At the time of the accident, Michael was attempting to activate a hydraulic lever on a tractor-trailer when he slipped and fell to the ground. The tires of the fully loaded tractor-trailer ran over Michael's body, crushing him.

Michael suffered extensive crush injuries from the accident. His injuries included the following: complex pelvic fractures; bowel and bladder dysfunction; lumbar spine fracture; SI joint crush injury; retroperitoneal hemorrhage; urethral injury; fractures to his hands, arms, feet, ankles, and legs; Chopart's amputation of his right foot; left upper arm degloving injury; skin grafting; ileus; traumatic neuropathy; buttocks pressure

wounds; scrotal injury; rectal injury; abdominal wall wounds; splenic injury; bladder rupture; depression; anxiety; adjustment disorder; posttraumatic stress disorder; and cognitive defects. Michael's right foot was amputated. Michael's left foot required multiple grafting surgeries.

Due to his injuries, Michael was hospitalized from October 14 to December 23, 2011. Complications from his injuries required him to be in and out of inpatient care for several more months after December 23.

When Michael did return home, he required 24-hour in-home nursing to allow him to continue his outpatient recovery and rehabilitation. The uncontested evidence at trial establishes that Michael cannot care for himself without assistance. He needs assistance with everything from preparing food to bathing. Michael requires assistance to change his catheter and colostomy bags. Michael's wounds require bandages to be changed and for the wounds to be packed.

Additionally, Michael has limited mobility and needs assistance moving. When he first returned home, Michael was unable to stand and required assistance to get into and out of his recliner. Due to repeated surgeries, Michael has had to learn how to walk three different times. At the time of trial, Michael could walk with his walker only 30 to 50 yards before needing a break. Michael primarily uses a heavy manual wheelchair for mobility. The heavy wheelchair was on loan from the University of Kansas Hospital. Precast Haulers' insurance company did not provide Michael with a manual wheelchair until a week before the trial, which was held on May 30, 2013.

The wheelchairs Michael was provided with are heavy and cannot roll on carpet very well. Michael cannot push himself through his yard and cannot move on his gravel driveway. He cannot put the wheelchair in a vehicle himself, and it is difficult for Courtney to do so. Michael testified that he can drive a car and that he still has his license. However, when he drives by himself, he has to leave his nonmotorized wheelchair in the driveway.

Michael's doctors recommended that he receive custom wheelchairs and a wheelchair accessible van. In February 2012, Michael was issued a "Physician's Order" to receive a

custom powered wheelchair, a custom manual wheelchair, and a wheelchair accessible van. Numerous other similar orders were subsequently made. In an affidavit, one of Michael's treating physicians concurred with his associate physicians that Michael required a custom manual wheelchair, a custom powered wheelchair, a powered scooter, and a wheelchair accessible van to assist in his outpatient recovery and rehabilitation from his work-related injuries.

Michael's 24-hour in-home care was originally provided by hired professionals. However, after 1½ months of 24-hour care, Michael could not tolerate having a night nurse. Michael's wife, Courtney, took over Michael's care from 7 p.m. to 7 a.m. Monday through Friday and for 24 hours per day on the weekends. During the week, Courtney works a full-time job outside the home. Therefore, from 7 a.m. to 7 p.m., Monday through Friday, Robin Chynoweth, a certified nursing assistant, provides Michael's care.

Courtney has replaced all but one of the certified nursing assistants. With the help of her son, Courtney provides care for Michael 108 hours per week. She testified that for a 6-month period, she moved an air mattress into the living room, where Michael slept, to care for him overnight. She provides all of the care of a nursing professional. In addition to the services provided by Chynoweth, Courtney changes Michael's fentanyl bandages and can give Michael his medication. Chynoweth's certification does not allow her to perform those functions.

At trial, Courtney testified that on the weekdays, she spends at least 3 hours per day directly assisting Michael and spends 8 to 12 hours per day on the weekend. Courtney stated that if she did not provide the care, 24-hour nursing care would be required, and that the nurses hired would need to be more qualified than Chynoweth. Courtney feared that if not for her care, Michael would need to be in a nursing home. Michael's treating physicians agreed with Courtney and averred in their affidavits that if Courtney was not available to provide assistance to Michael, additional in-home nursing services would have been required to allow Michael to continue his outpatient recovery and rehabilitation.

The trial court also received evidence concerning the payment of Michael's medical bills. Exhibit 5 in the record contains affidavits from representatives from the various medical care providers that took care of Michael after his accident. Each affidavit states the total bill, the amount of unpaid charges, and whether Cherokee Insurance Company made timely payments within 30 days. By way of example, the exhibit contains an affidavit from Bryan Medical Center. Michael received care at Bryan Medical Center from October 14 to November 22, 2011, incurring charges of $729,109.16. A representative from Bryan Medical Center requested payments from Cherokee Insurance Company on December 13, 2011, and again on March 21, April 6 and 9, May 7, July 24 and 26, August 7 and 29, and October 9, 2012. By October 9, no payments had yet been received. And as of May 7, 2013, when the affidavit was signed, $110,279.89 was still outstanding.

Exhibit 6, which was compiled by Michael's attorneys, is a demonstrative exhibit detailing the charges incurred, paid, and outstanding prior to and after the filing of the petition in this case. The medical bills at the time of trial totaled $2,161,555.30, of which $426,195.89 was still outstanding. Prior to the filing of the petition, Michael had incurred $1,498,065.68 in medical bills and the Cherokee Insurance Company had paid only $25,021.72.

Michael's counsel offered exhibit 7, a billing statement for services provided by Michael's counsel in this case. The affidavit states that reasonable rates of $150 per hour were charged by the attorneys and $75 per hour for the paralegals. The services and expenses listed by Michael's counsel totaled $36,555.

Prior to trial, Precast Haulers stipulated that Michael has been temporarily totally disabled and will remain temporarily totally disabled as the result of his work-related injuries indefinitely into the future. Precast Haulers also stipulated that Michael is entitled to an award of future medical care to treat his work-related injuries.

The issues remaining for determination by the trial court were Michael's entitlement to attorney fees for late payment of medical expenses, Michael's entitlement to certain assistive

devices, and whether Courtney was owed for home health care services provided. After receiving evidence and hearing testimony, the trial court held that (1) Precast Haulers was to provide and pay for a custom lightweight wheelchair, a custom powered wheelchair, and a wheelchair accessible van; (2) Precast Haulers was to reimburse Michael for home health care services provided by Courtney, in the amount of $1,080 per week, which is 108 hours multiplied by $10 per hour, and reimburse Michael for services rendered from the time he was released from the hospital to the date of trial in the total sum of $69,428.57; and (3) Precast Haulers was to pay Michael's attorney fees in the amount of $36,555.

## ASSIGNMENTS OF ERROR

Precast Haulers assigns that the trial court erred in finding that (1) Michael was entitled to attorney fees pursuant to § 48-125 in the amount of $36,555, (2) Courtney was entitled to compensation for the provision of home health care, and (3) Michael was entitled to a wheelchair accessible van.

On cross-appeal, Michael assigns that the trial court erred as a matter of law by limiting the amount of § 48-125 attorney fees awarded to the time expended by his attorneys.

## STANDARD OF REVIEW

[1,2] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[1] In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, the findings of fact of the trial judge will not be disturbed on appeal unless clearly wrong.[2]

---

[1] *Kim v. Gen-X Clothing*, 287 Neb. 927, 845 N.W.2d 265 (2014).

[2] *Id.*

[3] In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.[3]

## ANALYSIS

### WHEELCHAIR ACCESSIBLE VAN

Precast Haulers argues that the evidence does not support an award of a wheelchair accessible van. We disagree. We find the evidence provided in the record is sufficient competent evidence to support the trial court's award.

Neb. Rev. Stat. § 48-120(1)(a) (Cum. Supp. 2012) of Nebraska's workers' compensation statutes, states in part:

> The employer is liable for all reasonable medical, surgical, and hospital services, including plastic surgery or reconstructive surgery but not cosmetic surgery when the injury has caused disfigurement, appliances, supplies, prosthetic devices, and medicines as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment.

The issue of whether a wheelchair accessible van is an "appliance" under this state's workers' compensation statute is one of first impression. Although the statutes under which they were operating are not identical to Nebraska's, other courts have found that a wheelchair accessible van qualifies as an "appliance,"[4] a "'mechanical appliance,'"[5] an "'artificial replacement,'"[6] and an "orthopedic appliance."[7] Other courts, such as the Michigan Supreme Court, have found that the van itself, as a vehicle, is not an "appliance," but that the term

---

[3] *Id.*

[4] *Manpower Temporary Services v. Sioson*, 529 N.W.2d 259, 264 (Iowa 1995).

[5] *Crouch v. W. Va. Workers' Comp. Com'r*, 184 W. Va. 730, 733, 403 S.E.2d 747, 750 (1991).

[6] *Meyer v. N.D. Workers Comp. Bureau*, 512 N.W.2d 680, 684 (N.D. 1994).

[7] *Griffiths v. W.C.A.B.*, 596 Pa. 317, 321, 943 A.2d 242, 244 (2008).

encompasses the necessary modifications to the van to make it operable by the worker.[8]

When interpreting provisions of the Nebraska Workers' Compensation Act, our court has consistently given the act a liberal construction to carry out justly its beneficent purpose to provide an injured worker with prompt relief from the adverse economic effects caused by a work-related injury or occupational disease.[9] Therefore, although we have not previously explicitly defined "appliance," we have broadly interpreted the term. In *Miller v. E.M.C. Ins. Cos.*,[10] we held that home modifications for a man bound to a wheelchair could be medical expenses under the appliances or supplies categories. We stated that the modifications are compensable if they are "'required by the nature of the injury'" and if the modifications "'relieve pain or promote and hasten the employee's restoration to health and employment.'"[11]

Precast Haulers argues that a wheelchair accessible van is not a "medical service" which will relieve Michael's pain or hasten his restoration to health and employment. Precast Haulers also argues that Michael does not want a wheelchair accessible van and that Michael would not be able to drive it. Precast Haulers also notes other transportation services are available to Michael.

We reject each of Precast Haulers' arguments. The uncontested evidence in the record indicates that a wheelchair accessible van will hasten Michael's restoration to health and employment. One of Michael's treating physicians averred that Michael required a wheelchair accessible van to assist in his outpatient recovery and rehabilitation from his work-related injuries. There is no evidence in the record that a wheelchair accessible van would not help in his restoration to health.

Precast Haulers' other arguments are weak at best. The overwhelming testimony given by Michael indicates that he

[8] *Weakland v. Toledo Engineering Co., Inc.*, 467 Mich. 344, 656 N.W.2d 175 (2003).

[9] *Zwiener v. Becton Dickinson-East*, 285 Neb. 735, 829 N.W.2d 113 (2013).

[10] *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000).

[11] *Id.* at 451, 610 N.W.2d at 412 (quoting § 48-120).

wants to gain independence by having a wheelchair accessible van. Although Precast Haulers asserts that Michael cannot drive, Michael testified that he can drive and that he still has his driver's license. There is no evidence from Michael's doctors that Michael cannot or should not drive. Precast Haulers' argument also ignores that a wheelchair accessible van is necessary to allow Michael and his family to transport his new powered wheelchair, which was awarded by the trial court. Without a wheelchair accessible van, it is logical to assume that it may be difficult, if not impossible, for Michael and Courtney to transport his new powered wheelchair. And finally, although Michael has been provided with a transportation service to his medical appointments, it does not provide transportation for his personal needs.

In conclusion, the record provides sufficient competent evidence to establish that a wheelchair accessible van is an "appliance" that will help restore Michael's health. We, therefore, cannot say that the trial court was clearly wrong in determining that Precast Haulers should pay for a wheelchair accessible van.

### On-Call Compensation
### for Spouse

Precast Haulers argues that the evidence is not sufficient to support Courtney's receiving compensation for the provision of home health care for 48 hours of care on the weekends and 12 hours of care each weekday. In support of this argument, Precast Haulers argues that many of the hours spent by Courtney "on-call" were spent sleeping, completing ordinary household duties, and caring for herself, which hours should be considered noncompensable.

[4,5] Generally, pursuant to § 48-120, an employee may be reimbursed for nursing care in the employee's home or at a nursing home, when such care is necessitated by a work-related injury, so long as the cost of the care is fair and reasonable.[12] We have repeatedly stated that it is not essential

---

[12] *Bituminous Casualty Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990).

that the service be furnished by a doctor, nurse, or other medical person.[13] With this understanding, we have allowed payments to spouses[14] and unrelated persons[15] who provide the care. There are three basic requirements that must be met before compensation may be rendered for care to an injured employee by the spouse in the home: (1) The employer must have knowledge of the employee's disability and need of assistance as a result of a work-related accident; (2) the care given by the spouse must be extraordinary and beyond normal household duties; and (3) there must be a means of determining the reasonable value of the services rendered by the spouse.[16]

[6] Ordinary housekeeping tasks, which generally include cleaning, preparation of meals, and washing and mending clothes, are noncompensable.[17] Compensable tasks include serving meals in bed, bathing and dressing, administering medication, and assisting with sanitary functions.[18] However, we have held that a person rendering necessary medical services to a disabled worker on an "as-needed" basis need not render the services during each moment of compensated time, but, rather, must be available to perform the needed services during the times when needed.[19] We stated, quoting the Rhode Island Supreme Court case of *Bello v. Zavota Bros. Transp. Co., Inc.*,[20] as follows:

> "The fact that [a person] may not have been actively performing a strictly medical task at each and every

---

[13] See, *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr.*, 228 Neb. 38, 421 N.W.2d 25 (1988); *S & S LP Gas Co. v. Ramsey*, 201 Neb. 751, 272 N.W.2d 47 (1978).

[14] *Spiker v. John Day Co.*, 201 Neb. 503, 270 N.W.2d 300 (1978) (superseded by statute on other grounds as stated in *Koterzina v. Copple Chevrolet*, 1 Neb. App. 1000, 510 N.W.2d 467 (1993)).

[15] *S & S LP Gas Co. v. Ramsey, supra* note 13.

[16] *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr., supra* note 13.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Bello v. Zavota Bros. Transp. Co., Inc.*, 504 A.2d 1015 (R.I. 1986).

moment of the day does not mean that she should not be compensated for her continuous attendance. This case is analogous to the situation in which a night nurse watches over a sleeping patient. The fact that the patient sleeps through the night does not support an argument that the nurse should not be paid for the night. He or she must be present and available to meet the patient's needs, not according to some preestablished timetable, but as the patient experiences them."[21]

The fact that an attendant service provider may perform household tasks during "on-call" time does not alter either the need for or the nature of the services provided.[22]

[7] Precast Haulers attempts to distinguish this precedent by arguing that because Courtney is Michael's spouse, she should not be compensated for her "on-call" time. We find no relevant distinction between a spouse and a nonrelated third party, so long as the evidence supports compensability under the three-part test set out in *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr.*[23] For compensability of in-home care, our focus is on the "'nature of the service provided, not the status or devotion of the provider of the service.'"[24] A paid third-party nurse might read, nap, or perform household tasks and would nevertheless be compensated for that time.[25] Therefore, if the spouse is providing the same service while "on-call," the fact that the spouse is able to sleep or perform household tasks during that time is likewise irrelevant.[26] "This

---

[21] *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr., supra* note 13, 228 Neb. at 46, 421 N.W.2d at 30.

[22] *Id.* (citing *Standard Blasting & Coating v. Hayman*, 476 So. 2d 1385 (Fla. App. 1985)).

[23] *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr., supra* note 13.

[24] *Spiker v. John Day Co., supra* note 14, 201 Neb. at 522, 270 N.W.2d at 310 (Brodkey, J., concurring; Boslaugh, McCown, and White, C. Thomas, JJ., join).

[25] *Currier v. Roman L. Hruska U.S. Meat Animal Res. Ctr., supra* note 13 (citing *Brown v Eller Advertising Co*, 111 Mich. App. 538, 314 N.W.2d 685 (1981)).

[26] *Id.*

is so because, if the employer provided the services of an outside professional, that professional would be entitled to pursue his or her own interests during such 'on call' periods without diminution of compensation."[27] Compensation for a claimant's spouse for "on-call" nursing hours is allowed if supported by the evidence.[28]

Here, the evidence clearly supports all three of our requirements for spousal compensation. Precast Haulers does not contest that it had knowledge of Michael's disability and need of assistance as a result of a work-related accident or that there was a means of determining the reasonable value of the services rendered by Courtney. Rather, Precast Haulers argues that the evidence supports compensation of only 50 hours per week for services provided by Courtney, not 108 hours. We disagree.

This is a sufficiency of the evidence issue; therefore, every controverted fact must be resolved in favor of the successful party and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.[29] We begin by repeating that Precast Haulers does not contest that Michael needs 24 hours of care per day. In fact, Michael received 24 hours of care per day from paid third-party providers for 1½ months after he returned home from the hospital. The testimony of Michael, Courtney, and Chynoweth all support that Courtney has completely replaced the care of the night and weekend nurses. Indeed, Courtney has gone beyond the medical services the nurses originally provided. Courtney helps Michael move, bathes him, feeds him, tends to his open wounds, provides him with medication, and is available should he need emergency care. Michael's treating physicians have ordered 24-hour care for Michael and have averred that if Courtney were not available to provide assistance to Michael, additional in-home nursing services would

---

[27] *Edward Kraemer & Sons, Inc. v. Downey*, 852 P.2d 1286, 1289 (Colo. App. 1992).

[28] *Close v. Superior Excavating Co.*, 166 Vt. 318, 693 A.2d 729 (1997); *Edward Kraemer & Sons, Inc. v. Downey, supra* note 27.

[29] *Kim v. Gen-X Clothing, supra* note 1.

be required to allow Michael to continue his outpatient recovery and rehabilitation. No evidence in the record indicates to the contrary.

When viewing this evidence in the light most favorable to Michael, it is apparent that the sum of $1,080 per week, with back compensation for a total of $64\frac{2}{7}$ weeks for the services provided by Courtney, was reasonable and supported by sufficient competent evidence.

## ATTORNEY FEES

Finally, both parties argue that the trial court erred in the amount of attorney fees it awarded. Precast Haulers argues that the award of the entire amount of attorney fees requested was unreasonable and excessive. On cross-appeal, Michael argues that the amount of § 48-125 attorney fees awarded should not be limited to the hours worked by the attorneys, because Precast Haulers would be rewarded by delaying payment. We hold that the trial court did not err in awarding the full amount of attorney fees and no more.

[8] Attorney fees in workers' compensation cases are allowable only pursuant to statutory authorization.[30] Section 48-125(2)(a) states in part:

> Whenever the employer refuses payment of compensation or medical payments subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury or neglects to pay medical payments subject to such section after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

The purpose of the provision for attorney fees in § 48-125 is to encourage prompt payment by making delay costly if an employer neglects to pay medical payments after 30 days' notice has been given of the obligation for the

---

[30] *Elwood v. Panhandle Concrete Co.*, 236 Neb. 751, 463 N.W.2d 622 (1990).

medical payments.[31] Nonpayment of medical bills can have an extremely deleterious result for an injured worker.[32] Necessary medical care may be delayed for months pending litigation, which in itself may cause more severe permanent injury.[33]

[9] The determination of an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis.[34] In making that calculation, the trial court should consider, as in other attorney fee contexts, the value of legal services rendered by an attorney by considering the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.[35] Particular attention should be given to the amount of legal work performed in relation to the amount of the unpaid medical bill and the amount of the unpaid medical bill in relation to the workers' compensation award received.[36]

Precast Haulers argues that the award for attorney fees was unreasonable for three reasons: (1) Michael's counsels' work involved minimal legal skill, (2) Precast Haulers has been late in paying a small amount of the bills, and (3) attorney fees awarded should be only for fees directly attributed to the collection of unpaid bills. We find each argument to be without merit.

The trial court specifically found:

> This case involved extremely complex documentation, and while not all of the issues were litigated at trial, a very thorough set of exhibits was prepared and a

---

[31] *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999) (Gerrard, J., concurring; McCormack, J., joins).

[32] *Id.*

[33] *Id.*

[34] *Harmon v. Irby Constr. Co., supra* note 31.

[35] *Id.*

[36] *Id.*

competent brief was presented. Counsel has gone to great lengths to ensure that all of the medical documentation was comprehensible to the Court.

We give deference to the findings of the trial court. Considerable time was put into compiling the medical records, and a trial was held. Precast Haulers does not contest the number of hours worked by Michael's counsel. We find Precast Haulers' contention that opposing counsel did little to no skilled work to be wholly without merit.

Additionally, Precast Haulers' argument that very few bills were paid late is not supported by the record. At the time the petition was filed, the trial court found that Michael had incurred $1,498,065.68 in compensable medical expenses, but only approximately $25,000 had been paid. The record indicates that demands for payment had been made by certain medical providers over a month prior to the filing of the petition. Bryan Medical Center had requested payment a total of 11 times, and the first payment from Precast Haulers was not received until a year after the first request. After our review of the record, we cannot find error in the trial court's factual finding that payment was unjustifiably delayed on the majority of Michael's medical bills.

And finally, Precast Haulers argues that under *Harmon v. Irby Constr. Co.*,[37] the attorney fees should be limited to the fees directly attributable to the collection of unpaid medical bills. In *Harmon*, $3,904 in attorney fees was awarded for the late payment of a $165 medical bill.[38] We found the attorney fees to be unreasonable, because only a fraction of the fees could be directly attributed to the collection of the unpaid medical bill. In fact, as noted by the concurring opinion, it was clear from the record that the collection of this medical bill was incidental to the filing of the plaintiff's claim for permanent total disability benefits.[39] Our opinion in *Harmon* does not, as Precast Haulers contends, affirmatively state that only attorney

---

[37] *Id.*

[38] *Id.*

[39] *Id.* (Gerrard, J., concurring; McCormack, J., joins).

fees directly related to the collection of unpaid medical bills can be awarded. Rather, we simply found that the attorney fees in that case were unreasonable. As explained in the concurring opinion, it is appropriate to assess the "entire attorney fee in those cases where one of the underlying reasons for the filing of the workers' compensation claim is to establish compensability for a delinquent medical bill."[40] We find this statement is consistent with the statute. Section 48-120 does not limit reasonable attorney fees to those directly attributable to the collection of an unpaid medical bill. Rather, as already discussed, what constitutes reasonable attorney fees is determined on a case-by-case basis.[41]

In this case, we find that the trial court did not err in awarding the full amount of attorney fees. The primary reason that Michael filed this petition was Precast Haulers' and its insurer's failure to promptly pay for his medical expenses and bills. There was no controversy regarding the compensability of Michael's injuries. As discussed in the trial court's order and in this opinion, had Precast Haulers and its insurer paid Michael's bills and medical expenses, Michael would likely not have incurred such a hefty bill for attorney fees.

Michael's cross-appeal wants to take it one step further. Michael argues that reasonable attorney fees under our precedent can be, as a matter of law, greater than the actual attorney fees and expenses billed. Michael's argument is that due to the large amount of unpaid medical bills, the interest Precast Haulers' insurer made from late payment is greater than the award of attorney fees, and that thus, there is little deterrent in the trial court's award.

Regardless of whether a trial court could, as a matter of law, find reasonable attorney fees to be greater than the hours billed and expenses, the trial court did not do so in this case. We find that the trial court did not clearly err in awarding only the hours billed and expenses, $36,555. There is no indication in the trial court's order that the judge felt that she was limited,

---

[40] *Id.* at 431, 604 N.W.2d at 821.

[41] *Harmon v. Irby Constr. Co., supra* note 31.

as a matter of law, in the amount she could award attorney fees. Rather, the record shows that she awarded the entire amount requested by Michael. Exhibit 7 is the attorney fees and expenses given to the court, which total $36,555. Nowhere in the record does it appear that the trial court was asked to award more than that amount. An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal.[42] With no indication in the record that this issue was presented, we cannot say as a matter of law that the trial court erred in not awarding attorney fees greater than the amount billed. It is incumbent upon the party appealing to present a record that supports the errors assigned.[43]

Again, we stress that the determination of an award of attorney fees pursuant to § 48-125 must be calculated on a case-by-case basis.[44] The determination of the amount of attorney fees is necessarily a question of fact that requires a factual determination on several factors.[45] We, therefore, give great deference to the trial court's findings of fact and find that the trial court did not clearly err in awarding only the full amount of attorney fees requested by Michael.

## CONCLUSION

For the reasons stated herein, we affirm the decision of the trial court.

AFFIRMED.

---

[42] *In re Interest of Kodi L.*, 287 Neb. 35, 840 N.W.2d 538 (2013).

[43] See, e.g., *Sindelar v. Hanel Oil, Inc.*, 254 Neb. 975, 581 N.W.2d 405 (1998).

[44] See *Harmon v. Irby Constr. Co., supra* note 31.

[45] *Id.*